COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





ELIZABETH ROBISON MARTIN and
ROY G. MARTIN, JR.,

                            Appellants,

v.


KYLE H. MCDONNOLD and HOLLYCE
H. MCDONNOLD,

                            Appellees.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-05-00301-CV

Appeal from the

394th Judicial District Court

of Jeff Davis County, Texas 

(TC# 2104) 






O P I N I O N 

            This appeal arises from a trespass to try title suit brought by Appellees Kyle and Hollyce
McDonnold to recover a 242.32 acre tract in Jeff Davis County, Texas, which is enclosed by a
fence line with property owned by adjoining neighbors Appellants Elizabeth Robison Martin and
Roy G. Martin, Jr. to the south and east of the disputed land. In the suit, the Appellants filed a
general denial, pleaded “not guilty,” and asserted inter alia a right to limitation title by adverse
possession under Chapter 16 of the Texas Civil Practice and Remedies Code and a trespass to try
title counterclaim. In three issues, Appellants challenge the trial court’s granting of traditional
and no-evidence summary judgment in favor of Appellees. In addition, they contend the trial
court erred in denying their special exceptions to Appellants’ second amended original petition. 
We will affirm.
            In August 2002, by general warranty deed Appellee Kyle McDonnold purchased from
Barry McDannald a 999.25 acre tract in Jeff Davis County, which contained a 343.29 acre tract
of land out of Survey 24, E.L.&R.R. Ry. Co. Block WJG-1. Appellant Elizabeth Robison Martin
owns an approximately 2,232 acre tract to the south and east of Survey 24, which she acquired by
general warranty deed from her maternal uncle David Harper Medley in 1991. As we noted
above, a 242.32 acre tract of Mr. McDonnold’s deeded land out of Survey 24 (“the disputed
land”) is enclosed within fences with Mrs. Martin’s land. In November 2002, Mrs. Martin’s
father, Thomas Robison, acting under her authority locked the gate to the disputed land. In April
2004, Mr. McDannald executed a deed without warranty to Mr. McDonnold for the disputed
land, conveying “all of Grantor’s interest in Survey 24, Block WJG 1, EL&RR Ry. Co. Survey,
Jeff Davis County, Texas; including the lands described in Field Notes dated February 17, 1940,
recorded in Book H, Page 505, Surveyor Records, Jeff Davis County, Texas.” The 2004 deed
noted that it “shall not supplant that General Warranty Deed dated August 19, 2002, from
Grantor to Grantee . . . to the extent it covers land conveyed by said General Warranty Deed.” 
Then, in August 2004, Mr. McDonnold filed this trespass to try title suit, later amended, in which
Appellees alleged that on or about November 27, 2002, they were in actual possession or legally
entitled to possession of the disputed land, but on that date, Appellants unlawfully entered upon
and dispossessed them of the land and continue to withhold possession from Appellees.
            In April 2005, Appellees filed a hybrid summary judgment motion, in which they asserted
title to the disputed land, as a matter of law, by a regular chain of conveyances from sovereignty,
by superior title from a common source, and/or by prior possession. They also argued that their
summary judgment evidence affirmatively negated more than one of the essential elements of
Appellants’ adverse possession defense and counterclaims. With regard to the no-evidence
motion, Appellees asserted that Appellants lacked evidence on more than one of the essential
elements of their affirmative defense of limitation as listed in the motion and no evidence as to
essential elements of lease repudiation and notice thereof with respect to a 1977 surface lease
involving the disputed land between their respective predecessors in title.
            In response to the traditional motion arguments, Appellants contended that there were
numerous issues of material fact concerning acreage differences, survey discrepancies, the
common source of title, the enforceability, validity, and authenticity of the surface lease, and the
abstract of title. As to the no-evidence motion, Appellants argued that the motion lacked
specificity and conclusory as to the challenged elements of the adverse possession defense. 
Nevertheless, Appellants asserted that summary judgment evidence, including deposition
testimony from Mrs. Martin and her parents, Mrs. Martin’s affidavit, Dave Medley’s affidavit,
and the conduct of Mr. McDonnold, supported Appellants’ adverse possession claim of
continuous possession of the property for over twenty-five years. After a hearing, the trial court
granted Appellees’ traditional and no-evidence summary judgment motion and ordered that
Appellees recover title to and possession of the disputed land and that Appellants take nothing by
their counterclaims. This appeal now follows.
            In Appellants’ first three issues, they challenge the trial court’s granting of traditional and
no-evidence summary judgment in favor of Appellees.
Standard of Review
            The trial court granted both a traditional motion for summary judgment and a
“no-evidence” summary judgment. See Tex.R.Civ.P. 166a(c),(i). The standards for reviewing
traditional and no-evidence summary judgment rulings are well-established. In a traditional
summary judgment proceeding, the standard of review on appeal is whether the successful
movant at the trial level carried the burden of showing that there is no genuine issue of material
fact and that judgment should be granted as a matter of law. See Tex.R.Civ.P. 166a(c); Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Wyatt v. Longoria, 33 S.W.3d 26, 31
(Tex.App.--El Paso 2000, no pet.). Thus, the question on appeal is not whether the summary
judgment proof raises fact issues as to required elements of the movant’s cause or claim, but
whether the summary judgment proof establishes, as a matter of law, that there is no genuine
issue of material fact as to one or more elements of the movant’s cause or claim. Gibbs v.
General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970); Wyatt, 33 S.W.3d at 31. In resolving
the issue of whether the movant has carried this burden, all evidence favorable to the nonmovant
must be taken as true and all reasonable inferences, including any doubts, must be resolved in the
nonmovant’s favor. Nixon v. Mr. Property Mgmt. Co., Inc., 690 S.W.2d 546, 548-49 (Tex.
1985). When a plaintiff moves for summary judgment against a defendant’s counterclaim, the
plaintiff must negate one or more of the essential elements of the defendant’s counterclaim.
Adams v. Tri-Continental Leasing Corp., 713 S.W.2d 152, 153 (Tex.App.--Dallas 1986, no writ);
Holmes v. Dallas Int’l Bank, 718 S.W.2d 59, 60-1 (Tex.App.--Dallas 1986, writ ref’d n.r.e.).
            A no-evidence summary judgment under Tex.R.Civ.P. 166a(i) is essentially a pretrial
directed verdict, and a reviewing court applies the same legal sufficiency standard. Wyatt, 33
S.W.3d at 31. The party moving for summary judgment on this basis must specifically state the
elements as to which there is no evidence. See Tex.R.Civ.P. 166a(i). The burden then shifts to
the nonmovant to produce evidence raising a fact issue on the challenged elements. Id. When
reviewing a no-evidence summary judgment, the reviewing court views the evidence in the light
most favorable to the nonmovant, disregarding all contrary evidence and inferences. Merrell
Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). A no-evidence
summary judgment is improperly granted if the respondent brings forth more than a scintilla of
probative evidence to raise a genuine issue of material fact. King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence rises to
a level that would enable reasonable, fair-minded persons to differ in their conclusions. Havner,
953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is so weak as to do
no more than create a mere surmise or suspicion of a fact. Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983). In a case where the trial court’s judgment does not specify the
ground or grounds relied upon for its ruling, the summary judgment must be affirmed if any of
the theories advanced is meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).
            In Issue One, Appellants contend that the Appellees’ traditional summary judgment
motion was legally insufficient and that they also failed to carry the burden of proof for a trespass
to try title action.



            A trespass to try title action is a procedure by which claims to title or the right of
possession may be adjudicated. Rogers v. Ricane Enterprises, Inc., 884 S.W.2d 763, 768 (Tex.
1994). The plaintiff in a trespass to try title action must recover, if at all, on the strength of its
own title and not on the weakness of the defendants title. Rogers, 884 S.W.2d at 768; Adams v.
Rowles, 149 Tex. 59, 56, 228 S.W.2d 849, 853 (1950). The plaintiff has the burden to establish
superior title by showing it has: (1) title emanating from the sovereignty of the soil; (2) a
superior title in itself emanating from a common source to which the defendant claims; (3) title
by adverse possession; or (4) title by earlier possession coupled with proof that possession has
not been abandoned. Rogers, 884 S.W.2d at 768; see also Land v. Turner, 377 S.W.2d 181, 183
(Tex. 1964).
            With regard to the sufficiency of the motion, Appellants argue that Appellees’ motion
failed to comply with Tex.R.Civ.P. 166a(c) because it did not state under which of the four
methods their trespass to try title claim was proven as a matter of law. See Tex.R.Civ.P. 166a(c)
(“[t]he motion for summary judgment shall state the specific grounds therefor.”). In reviewing
Appellees’ motion, we find that it clearly identifies their cause of action and the four methods by
which they could prove title to their land. Further, Appellees stated that they had uncontroverted
summary judgment evidence that established title from sovereignty, namely the certified
documents in its abstract of title, and in addition, evidence that established title from a common
source, title through prior possession, and title under the tenancy exception by the same
documents. There is no question that Appellees’ traditional summary judgment motion gave
Appellants fair notice of the specific grounds on which Appellees asserted their claim was
established as a matter of law. Therefore, we reject this portion of Appellants’ first issue.
            Next, we turn to the issue of whether Appellees carried their burden in establishing their
trespass to try title claim as a matter of law. The summary judgment evidence presented by
Appellants in their abstract of title clearly shows that Appellants proved a regular chain of title
from sovereignty. Specifically, uncontroverted evidence showed that the disputed 242.32 acres is
included within the 424.6-acre tract, Survey 24-B, owned by Mr. McDonnold’s remote
predecessors in title. There was also uncontroverted evidence that Appellants locked the gate to
the disputed property in November 2002.
            Appellants, however, claim that there are genuine fact issues as to the validity of
Appellees’ title based on acreage differences in various deeds, discrepancies in prior surveys of
the land, and the existence of a vacancy in the patented property. First, Appellants claim that
Mr. McDonnold’s immediate predecessor in title obtained the property under a partition deed
that only deeded him 240.60 acres out of Survey 24. The deed in question, however, also granted
Mr. McDonnold’s immediate predecessor in title an additional 102.69 acre tract out of
Survey 24, for a total of 343.29 acres. Appellants have failed to show that there is a fact issue as
to the proper acreage transferred to Appellees under their 2002 warranty deed.
            Second, Appellants claim that there are various survey discrepancies, including conflicts
in starting points, directions, monuments, and distances among the surveys in the instruments in
Appellees’ chain of title. Appellants point out that the 1940 corrected field notes do not contain
the markers indicated in the original field notes for the 640 acres in Survey 24. The inaccuracies
in the surveys attached to Appellees’ title documents, which purportedly have over time
incorrectly located Survey 24 on the ground, do not, despite Appellants’ contentions, create
genuine issues of material fact. For instance, Appellants note that there is a 515.73' discrepancy
in survey measurements for the west line of Survey 24, showing that the survey upon which
Appellees rely embraces part of Survey 25. Appellants contend that this discrepancy puts the
location of Appellees’ tract in question as well as raises an issue about the acreage appropriately
claimed under Appellees’ title. We disagree. The 1940 patent and the corrected field notes place
this land within Survey 24-B and as such, Appellees have superior title to it from the sovereign
when this land was conveyed in 2002 and moreover, the evidence shows that Appellants do not
own any part of Survey 25, E.L.&R.R. Ry. Co. Block WJG-1 through their title documents. 
            Appellants also complain that there is a conflict in the south line of E.L.&R.R. Ry. Co.
Block WJG-1, arguing that it is not the actual southern boundary for the 242.32 acre tract
claimed by Appellees. Appellants assert that Appellees knew there existed a vacancy along the
south line of the disputed land between their purported property and Appellants’ land when
Mr. McDonnold filed an application on a vacancy of unsurveyed public school land in 2003, but
that Appellees are now attempting to claim the vacancy in this case. Appellants argue that
Appellees cannot establish title on property that is unsurveyed public school land, which belongs
to the State of Texas and is administered by the General Land Office. See Tex.Nat.Res.Code
Ann. § 51.172(6)(Vernon Supp. 2006)(defining “vacancy”). They assert that the existence of
this vacancy creates a fact issue for the trier of fact. We disagree. The vacancy was included in
the 1940 patent to Survey 24-B, thus Appellees have shown superior title to that portion of the
disputed land. To the extent that Appellants are attempting to collaterally attack the 1940 patent,
only the State or one who holds an interest in the land prior to the person to whom the patent is
issued has standing to attack the patent.


 See Singleton v. Terrel, 727 S.W.2d 688, 691
(Tex.App.--Texarkana 1987, no writ). Appellants simply have no standing to challenge a defect
or irregularity in the State’s patent to Appellees’ predecessor in title.
            With regard to the east line of Survey 24, E.L.&R.R. Ry. Co. Block WJG-1, Appellees
concede that there is a possible overlap with the west line of Appellants’ land in Survey 7,
E.L.&R.R. Ry. Co. Block WJG-3, but we agree that this overlap in the prior surveys does not
raise a genuine issue of material fact as to the ownership of the disputed land. This is the case
because Appellants’ trespass to title claim specifically excluded this overlapping portion of land
from the suit. Thus, the 242.32 acre tract involved in the dispute is completely separate from the
alleged overlapping land that is located immediately to its east. Because Appellees established
their title to the disputed land emanated from the sovereign as a matter of law and no genuine
issues of material fact exist with respect to this claim, we overrule Appellants’ Issue One.
            In Issue Two, Appellants argue that Appellees’ no-evidence motion failed to comply with
Tex.R.Civ.P. 166a(i) because it did not comport with the requirements of the rule, which require
a movant to state specifically the elements of the nonmovant’s claim or defense for which there
is no evidence.
            Texas Rule of Civil Procedure 166a(i) requires that the no-evidence summary judgment
motion “state the elements as to which there is no evidence.” See Tex.R. Civ. P. 166a(i). The
comments to Rule 166a(i) which are “intended to inform the construction and application of the
rule,” states, “[t]he motion must be specific in challenging the evidentiary support for an element
of a claim or defense; paragraph (i) does not authorize conclusory motions or general
no-evidence challenges to an opponent’s case.” See Tex.R.Civ.P. 166a cmt. Thus, under the
rule, a no-evidence summary judgment motion must state the specific elements as to which there
is no evidence, that is, it must not be general or conclusory. See Tex.R. Civ. P. 166a(i); Johnson
v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002); In re Estate of Swanson, 130
S.W.3d 144, 147 (Tex.App.--El Paso 2003, no pet.).
            Reviewing the no-evidence motion, we note that in Article II, Appellees asserted that
Appellants lacked evidence to support more than one of the essential elements of lease
repudiation and more than one of the essential elements of their affirmative defense of limitation. 
 Appellees then listed the elements of Appellants’ adverse possession claim for which there was
no evidence under the ten-year limitations period as follows: no actual possession, other than as
a tenant or constructive tenant of their successors in title; no adverse possession; no exclusive
possession; no peaceable; no continuing, uninterrupted possession; no notorious possession
(open and visible possession); no actual residence, cultivation or agricultural, or manufacturing
use of the land in controversy; no use or enjoyment other than cattle grazing and harvesting of
native vegetation. See Tex.Civ.Prac.&Rem.Code Ann. §§ 16.026, 16.021 (Vernon 2002).
            Appellees also asserted that Appellants lacked evidence to support an adverse possession
claim under the three-year limitations period, specifically claiming there was no evidence of
possession under title or color of title for any period of three years; likewise, for the five-year
limitations period, no payment of taxes on the property or claims on the property under a duly
registered deed. See Tex.Civ.Prac.&Rem.Code Ann. §§ 16.024, 16.025. With respect to
adverse possession under the twenty-five year limitations period, Appellees asserted that there
was no evidence to show Appellants were in peaceable and adverse possession while cultivating,
using, or enjoying the same during any period of twenty-five or more consecutive years nor was
there evidence that Appellants or their predecessors possessed the land in good faith or under a
deed. See Tex.Civ.Prac.&Rem.Code Ann. § 16.027.
            Finally, Appellees also asserted that there was no evidence that Appellants or their
predecessors had repudiated the 1977 surface lease agreement between their respective
predecessors in title with respect to the now disputed land, namely that neither Appellants nor
their predecessors had ever repudiated the surface lease, have ever attempted to repudiate the
lease, had terminated or attempted to terminate the lease, or had given notice of their repudiation
or termination and subsequent intent to claim the land in controversy.
            The purpose of the specificity requirement is to provide the nonmovant with fair notice of
the matters on which it must produce some evidence. Comty Initiatives, Inc. v. Chase Bank of
Texas, 153 S.W.3d 270, 279 (Tex.App.--El Paso 2004, no pet.). Although Appellants essentially
challenged every element of Appellees’ adverse possession defense under the various limitations
periods allowed by statute, neither Rule 166a(i) nor its comment forbid such a challenge, as long
as each element is distinctly and explicitly challenged. Comty Initiatives, Inc., 153 S.W.3d at
280. We conclude that Appellees’ no-evidence motion was sufficiently specific in that is clearly
identified the elements that were lacking in Appellees’ adverse possession limitations defense. 
Issue Two is overruled.
            In Issue Three, Appellants argue that the trial court erred in granting the no-evidence
motion because there was sufficient evidence raised to a genuine issue of material fact as to
Appellants’ adverse possession claim. Appellants claim that they and their predecessors in title
have exercised dominion over the property at issue for over fifty years and have put the disputed
property to use for a longer period than required under the adverse possession statutes. 
Appellants point to the following summary judgment evidence in support of their contention. In
her deposition testimony, Mrs. Martin stated that a third party could visibly perceive that she was
claiming the land based on cattle ranch use and the exterior fences Mrs. Martin stated that her
uncle, Harper Medley, managed the entire ranch from the time of her father’s death until her
uncle deeded it to her in April 1991. According to Mrs. Martin and her father Thomas “Tom”
Robison, after April 1991, Wayne Baize leased the ranch for about a two- or three-year period
and then Mr. Robison managed the ranch. Prior to 2004, Mrs. Martin had told people that she
owns “the ranch,” though she had never claimed the disputed land in terms of its legal
description. Mrs. Martin and Mr. Robison both stated that in the past they have leased the ranch,
including the disputed land, to others for hunting by way of word of mouth. Mr. Robison also
testified that he first saw the ranch land in 1955 or 1956, and since then, the disputed land and
the other 2,226 acres of the ranch have not been used any differently than when he first became
aware of the land in 1956.
            In addition to the above evidence, Appellants argue that Mrs. Martin’s affidavit, which
was attached to their reply motion, considered alone constitutes sufficient evidence to defeat the
no-evidence motion. In that affidavit, Mrs. Martin states in relevant part:
I was born in 1962 in Fort Davis, Texas. At that time and until their deaths, my
great grand mother, David Elizabeth Medley, and grandparents, Dave and Ruby
Medley lived and ranched on the Medley Crow’s Next Ranch where the property
at issue is located. From 1965 until his death in 1978, I helped my grandfather
Dave Medley with the ranch chores such as shoeing horses, doctoring animals,
feeding cattle in the pasture and the pens, fixing water lines, mending fences,
gathering cattle horse back, hunting and trapping varmits, branding and shipping
calves. Many of these chores took place in the north part of what my family calls
the Windmill Pasture, Round Top Mountain Pasture and Oak Tank Pasture.
 
As I understand Kyle McDonnold and John Spanagel’s description of the tract
Kyle is claiming, this is in the north part of the Windmill Pasture, Round Top
Mountain Pasture and Oak Tank Pasture. My family has always controlled,
claimed and managed this tract. As a young child, I killed my first mule deer in
the Windmill Pasture and in the more recent years. I have personally driven
hunters along the perimeter fence of the Windmill Pasture, and Oak Tank Pasture
[who] killed deer in both pastures. I have also hunted, hiked and guided guests
through the Round Top Mountain Pasture. I have never seen Kyle McDonnold or
anyone in our pastures and he never told me he was coming into those pastures. 
My father Tom Robison and I have run cattle on this tract as did Wayne Baize
when he leased it from me.

Appellants also argue that their claim was open, notorious, exclusive, and hostile to any third
party, because Mr. McDonnold recognized it as such while he was representing Mr. McDannald,
his immediate predecessor in title, in the partition process for the disputed land. Specifically,
Appellants assert that this contention is supported by evidence that Appellees attempted to
circumvent their adverse possession claim through Mr. McDonnold’s legal advice concerning a
proposed fence line agreement between Mr. McDannald and Appellants as a means of resolving
the conflicting surveys issue and Mr. McDonnold’s July 14, 2004 letter to Mrs. Martin’s attorney
proposing a fence line agreement between the parties.



            To support an adverse possession claim, a claimant must prove: (1) actual possession of
the disputed property; (2) under a claim of right; and (3) that it is adverse or hostile to the claim
of the owner and was consistently and continuously so for the duration of the statutory period. 
Cherokee Water Co. v. Freeman, 145 S.W.3d 809, 817 (Tex.App.--Texarkana 2004, pet. denied). 
The test of hostility is whether acts performed by the claimant on the land, and the use made of
the land, was of such a nature and character as to reasonably notify the true owner of the land that
a hostile claim was being asserted to the property. Id. Possession must not only be actual, but
also visible, continuous, notorious, distinct, hostile (i.e., adverse), and of such a character as to
indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. Id., citing
Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990); see also Tex.Civ.Prac.&Rem.Code Ann.
§ 16.021(1)(adverse possession means “actual and visible appropriation of real property,
commenced and continued under a claim of right that is inconsistent with and is hostile to the
claim of another person.”).
            At most, the evidence showed that Appellants and their predecessors in title have used the
disputed land enclosed within the fences of their ranch for cattle ranching and related chores, and
have done so over the years without any knowledge that some of their claimed ranch land may
have belonged to someone else. A claimant’s subjective belief that the property claimed
adversely belonged to him, standing alone, fails to raise a fact issue. See e.g.,Ryland Group, Inc.
v. Hood, 924 S.W.2d 120, 122 (Tex. 1996)(noting that “my understanding” did not raise a fact
issue); Texas Div.-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994)(stating “I believe”
does not raise a fact issue).
            There was also uncontroverted evidence that neither Mrs. Martin nor her father knew who
had put up the fences that enclosed the portion of Survey 24 that was not in the family’s deeds. 
Moreover, Mr. and Mrs. Robison had no knowledge of ever having constructed new exterior
fences on the ranch. Under Texas law, use of land for grazing cattle along with other related use,
is insufficient to establish title by adverse possession where the disputed property was
incidentally enclosed by casual fences. See Rhodes, 802 S.W.2d at 646; McDonnold v. Weinacht,
465 S.W.2d 136, 142 (Tex. 1971); see also Mohnke v. Greenwood, 915 S.W.2d 585, 593
(Tex.App.--Houston [14th Dist.] 1996, no writ)(adverse possession claim not established by
evidence of barbed wire fence, cattle grazing, and tree planting). The grazing of an enclosure
casually or incidentally created has never been regarded as an actual and visible appropriation of
the land within the meaning of the statute. McDonnold, 465 S.W.2d at 141. Consequently,
Appellants’ failed to raise a fact issue in support of their adverse possession claim.
            Further, even if there was some probative evidence to support Appellants’ claim,
Appellants presented no evidence to defeat the existence of an unrepudiated surface lease
agreement between the McDannalds and Dave Medley (Appellants’ predecessor in title),
executed in September 1977, in which Appellees’ predecessors in title agreed to lease for one
dollar per year, the eastern part of “Section 24” Block WJG-1, E.L.&R.R. Ry. Co. Survey under
Mr. Medley’s fence, “236.36 acres (more or less)” to Dave Medley and “his heirs and assigns.” 
Under the lease agreement, both parties had the right to terminate the lease by notification in
writing “or (on the part of the McDannalds) by building a fence along the true line as determined
by survey.” [Emphasis added]. The McDannalds reserved the right to enter the leased land “at
any time” but would “make a good faith effort each time to avoid disturbance to grantor’s
livestock.” Notably, the lease states that Mr. Medley quitclaims to the McDannalds “all right,
title and interest in that part of said Section 24 owned by them and agrees that his occupancy has
been and is as a tenant only.”
            Once the landlord-tenant relationship is established, possession by the tenant will not be
considered adverse to the owner until: (1) there is repudiation of the relationship and the
assertion of a claim of right adverse to the owner; and (2) notice of such repudiation is given to
the owner. Louisiana Pacific Corp. v. Holmes, 94 S.W.3d 834, 839 (Tex.App.--San Antonio
2002, pet. denied). Joint or common possession by the claimant and the owner prevents the
claimant’s possession from the requisite quality of exclusiveness. Id. Moreover, the estoppel of
a tenant to deny his landlord’s title or to claim adversely against him may be asserted not only by
his original lessor, but also those that succeed his title. Angelina County Lumber Co. v.
Reinhardt, 270 S.W.2d 259, 263 (Tex.Civ.App.--Beaumont 1954, no writ). In this case, there is
no evidence that the successors in title of either Mr. Medley or the McDannalds ever repudiated
or terminated the surface lease prior to the November 2002 lockout. Further, constructive
tenancy attached to Appellants’ possession, whether or not they knew of the existence of the
surface lease agreement or not. See Reinhardt, 270 S.W.2d at 263. None of the ranch activities
described in the deposition testimony or Mrs. Martin’s affidavit are inconsistent with Appellants’
use of the disputed land as tenants. This evidence of an unrepudiated constructive landlord-tenant relationship with respect to the disputed land negates Appellants’ adverse possession
claim to the same land.
            In addition, to the extent that Appellants have challenged the “validity, enforceability, and
authenticity” of the surface lease agreement in their brief, we observe that the document was
executed on September 13, 1977 by Gordon Cleaves McDannald, La Velle McDannald, and
Dave Medley. It contains a certification of acknowledgment by Notary Public Carolyn Rogers,
executed that same date for the McDannalds’ signatures. The document also contains the
following certification of acknowledgment, in relevant part, for Dave Medley:
BEFORE ME, the undersigned, a Notary Public in and for said County and
State, on this day personally appeared DAVE MEDLEY, known to me to be the
person whose name is subscribed to the foregoing instrument and acknowledged
to me that he executed the same for the purposes and consideration therein
expressed.
 
GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 26th day
of October, 1977.
 
R.O. Bledsoe Notary Public in and for Presidio County, Texas.

The surface lease agreement was recorded on May 3, 1978.
            Appellants question the validity of the document, alleging that Mrs. McDannald passed
away in October 20, 1977 in Galveston County, Texas, six days before Dave Medley “signed” 
the document and in addition, that the agreement was recorded after the deaths of both
Mrs. McDannald and Dave Medley. The record, however, shows that Mrs. McDannald died on
October 20, 1997, not in 1977. The order admitting Mr. Medley’s will to probate is dated May 1,
1978 and Mrs. Martin testified that her grandfather David “Dave” Medley died around April 11,
1978. However, this evidence, standing alone, does not defeat the binding effect of the surface
lease agreement on the parties during the delay in the recording. See Tex.Prop.Code Ann.
§ 13.001(b)(Vernon 1984)(an unrecorded instrument is binding on a party to the instrument and
the party’s heirs); Adams v. First National Bank of Bells/Savoy, 154 S.W.3d 859, 868 (Tex.App.--Dallas 2005, no pet.)(a deed does not have to be recorded to convey title to real property); Burris
v. McDougald, 832 S.W.2d 707, 709 (Tex.App.--Corpus Christi 1992, no writ)(recording of a
deed is not essential to an effective conveyance of title).
            Appellants also assert that Roxa Ann Robison, who is Mr. Medley’s daughter and
Mrs. Martin’s mother, testified at her deposition that the signature on the surface lease was not
Dave Medley’s signature. In her deposition testimony, Mrs. Robison stated that her father signed
his name “D.E. Medley” and did not sign as “Dave Medley” on anything of importance. 
Mrs. Robison was not familiar with the surface lease agreement, but stated that “Dave Medley”
was not the way he signed his name. This testimony, however, does not raise a fact issue as to
the validity of the document because the lease contains an uncontroverted certification of
acknowledgment by Mr. Bledsoe. This acknowledgment shows that Mr. Medley personally
appeared before Mr. Bledsoe and acknowledged that he executed the surface lease agreement for
the purposes and considered therein expressed. To raise a fact issue as to the validity of the
document based on the allegedly forged signature, Appellants would have had to have presented
some evidence that Mr. Medley did not appear before Mr. Bledsoe or that if he did, Mr. Bledsoe
practiced some fraud or imposition on him, or had not entered into the agreement for the
purposes and consideration expressed in the agreement. See Stout v. Oliveira, 153 S.W.2d 590,
596-97 (Tex.Civ.App.--El Paso 1941, writ ref’d w.o.m.). Since Appellants’ failed to present
such evidence, their challenge to the authenticity of the document fails to raise a fact issue to
defeat the no-evidence motion on their adverse possession claim. Accordingly, we conclude that
the trial court did not err in granting the dual motion for traditional and no-evidence summary
judgment in favor of Appellees. Issue Three is overruled.
            In their fourth issue, Appellants argue that the trial court erred in denying their motion for
further special exceptions to Appellees’ second amended original petition. We review a trial
court’s ruling on special exceptions for an abuse of discretion. Hefley v. Sentry Ins. Co., 131
S.W.3d 63, 65 (Tex.App.--San Antonio 2003, pet. denied); Kutch v. Del Mar College, 831
S.W.2d 506, 508 (Tex.App.--Corpus Christi 1992, no writ). The test for an abuse of discretion is
whether the trial court acted without reference to any guiding rules or principles. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).
            Appellants claim that Appellees’ second amended original petition failed to comply with
Rule 783 of the Texas Rules of Civil Procedure because it did not meet the pleading
requirements for a trespass to try title claim. Rule 783 requires, in relevant part, that the petition
state:
(a)The real names of the plaintiff and defendant and their residences, if
known.
 
(b)A description of the premises by metes and bounds, or with sufficient
certainty to identify the same, so that from such description possession
thereof may be delivered, and state the county or counties in which the
same are situated.
 
(c)The interest which the plaintiff claims in the premises, whether it be a fee
simple, or other estate; and if he claims an undivided interest, the petition
shall state the same and the amount thereof.
 
(d)That the plaintiff was in possession of the premises or entitled to such
possession.
 
(e)That the defendant afterward unlawfully entered upon and dispossessed
him of such premises, stating the date, and withholds from him the
possession thereof.

Tex.R.Civ.P. 783(a)-(e).

            In pertinent part, the petition states:
II. PARTIES
 
Plaintiffs are individuals now residing in Midland, Midland County,
Texas. Defendants are individuals now residing in Boerne, Kendall County,
Texas, and have already been personally served with citations.

III. OWNERSHIP
 
At all times mentioned, Plaintiffs were, and still are, the owners in fee
simple of the entire surface estate and an undivided five/sixteenths (5/16ths)
interest in the oil, gas and other minerals, plus the leasing or executive rights as to
an additional undivided five-sixteenths (5/16ths) mineral interest, in that parcel of
real property and all improvements on that real property located in Jeff Davis
County, Texas, described in Exhibit ‘A’ to that Deed from Barry C. McDannald to
Kyle H. McDonnold dated April 21, 2004, recorded in Volume 181, Page 229,
Official Public Records of Jeff Davis County, Texas (hereinafter the ‘Subject
Property’) . . . .

IV. DISPOSSESSION
 
On or about November 27, 2002, Plaintiffs were in actual possession of
the Subject Property. On that date, Defendants unlawfully entered upon and
dispossessed Plaintiffs of the Subject Property. Defendants continue to withhold
possession thereof from Plaintiffs.

V. WITHHOLDING POSSESSION
 
In the alternative to the next preceding Paragraph IV, if Plaintiffs are
found not to have been in actual possession of the Subject Property on or about
November 27, 2002, then on or about that date Plaintiffs were, and still are,
legally entitled to possession of the Subject Property. On or about that date
Defendants wrongfully entered upon the Subject Property and continue to
withhold possession thereof from Plaintiffs.

            In reviewing the petition, we conclude that the trial court did not abuse its discretion in
denying the Appellants’ special exceptions to the petition. The petition sufficiently identified the
parties, plaintiffs’ claim of ownership to the disputed land, and described the land by reference to
the metes and bounds description attached to Mr. McDonnold’s 2004 deed without warranty. 
Although Appellants contend that the petition alleges that Appellees’ claim of ownership was
based on the 2004 deed, it is clear that the 2004 deed was mentioned only in the context of
providing a sufficient description of the disputed 242.32 acre tract in question. The petition
sufficiently alleges that Appellees were in actual possession or entitled to possession on or about
November 27, 2002 and that on that date, Appellants unlawfully entered upon and dispossessed
Appellees of the disputed land, and “continue” to withhold possession of that land from them. If
a plaintiff’s petition substantially follows the provisions of Rule 783 is will be considered
sufficient for pleading purposes. See Wagner v. Pulliam, 361 S.W.2d 470, 473 (Tex.Civ.App.--Eastland 1962, no writ). Further, in terms of ownership of the land, the plaintiff is only required
to allege the interest which he claims in the premises, by fee simple or other estate. Id. Thus,
Appellees’ reference to the 2004 deed to describe the disputed land did not supplant Appellees’
allegation that they possessed the disputed land prior to November 27, 2002. Issue Four is
overruled.
            We affirm the trial court’s judgment.
December 7, 2006
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.)(Sitting by Assignment)