

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-08-00304-CR

BRADLEY KELTON CRENSHAW                                        APPELLANT

V.

THE STATE OF TEXAS                                                 STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 4 OF TARRANT COUNTY

----------

## OPINION ON REMAND

----------

### I. INTRODUCTION

The Texas Court of Criminal Appeals remanded this case to us. *See Crenshaw v. State*, 378 S.W.3d 460, 462 (Tex. Crim. App. 2012). In two points, appellant Bradley Kelton Crenshaw argues that his conviction for driving while intoxicated (DWI) should be reversed because the State violated his due process

rights by "expanding the scope of the prosecution beyond that noticed to the defense in the charging instrument." We will affirm the trial court's judgment.

## II. BACKGROUND

The State charged Crenshaw by information, alleging that he operated a motor vehicle in a public place while he was intoxicated by "not having the normal use of his mental or physical faculties by reason of the introduction" of (1) alcohol or (2) "alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances into his body." *See* Tex. Penal Code Ann. §§ 49.01 (West 2011), 49.04 (West Supp. 2013).

At trial, Officer Andrew Anderson testified that he stopped Crenshaw around 2:00 a.m. after witnessing him changing lanes without signaling and weaving onto the shoulder of the road as he exited the highway. *Crenshaw*, 378 S.W.3d at 462. Anderson smelled alcohol on Crenshaw's breath, and he noticed that Crenshaw had heavy, red, bloodshot eyes and soft, slurred speech. Anderson also smelled the odor of marijuana on Crenshaw. *Id.* Crenshaw admitted to having drunk a bourbon and Coke at 1:00 a.m. and that he had smoked marijuana a week and a half previously but denied that he had smoked that night. During field sobriety tests, Crenshaw demonstrated several clues of intoxication. Thus, under the totality of the circumstances, Anderson "had reason to believe [Crenshaw] was intoxicated" and arrested Crenshaw for DWI. *Id.* at

463. Later, Anderson conducted an inventory search of Crenshaw's vehicle and found a marijuana leaf in the center console.

Crenshaw consented to a blood draw, which occurred at 4:01 a.m. *Id.* In anticipation of the State's introduction of his blood-test results and extrapolation testimony, Crenshaw objected, under Rules of Evidence 401 and 402, that the evidence would be confusing to the jury and that it was not relevant to whether he had lost the normal use of his faculties at the time of the alleged offense. *See id.*; *see also* Tex. R. Evid. 401, 402. The trial court overruled the objection and granted Crenshaw a running objection. *Crenshaw*, 378 S.W.3d at 463.

Andrew Macey, a forensic scientist at the Texas Department of Public Safety's crime laboratory in Garland, testified that the blood sample taken from Crenshaw contained 0.07 grams of alcohol per 100 mL of blood. *Id.* Angela Springfield, chief toxicologist of the Tarrant County Medical Examiner's Office, explained that the State of Texas designates a 0.08 blood alcohol concentration (BAC) as the legal level of intoxication but that the mental or physical changes resulting from intoxication can be scientifically measured at BAC levels of 0.03 and 0.04. *Id.* Although Springfield testified that she would need more information to determine Crenshaw's exact BAC at the time of driving, she opined that it was higher than 0.08. For example, she explained that if a person is 6′1″ and 140 pounds, has had "one or two bourbon and Cokes," had his last drink at 1:00 a.m., is stopped by the police at 2:06 a.m., and had a blood draw at

3

4:01 a.m. that showed a BAC of 0.07, then that person would have had a BAC of at least 0.08 at the time he was driving. *Id.*

During the charge conference, the State objected to the proposed definition of intoxication, which did not state that a person was intoxicated if he had a BAC of 0.08 or more. In response, the trial court included the per se definition in the abstract portion of the jury charge but did not include it in the application paragraph. *Id.* The application paragraph tracked the language of the information. *Id.* at 463–64.

### III. DIRECT APPEAL TO THIS COURT

On direct appeal, Crenshaw argued that the trial court erred by submitting a charge that instructed the jury on both the subjective and per se definitions of intoxication when the information alleged only the subjective definition. *Crenshaw v. State*, No. 02-08-00304-CR, 2011 WL 3211258, at *3 (Tex. App.—Fort Worth July 28, 2011) (mem. op., not designated for publication), *rev'd*, 378 S.W.3d 460 (Tex. Crim. App. 2012). This court agreed, and holding that the error was harmful, we reversed the trial court's judgment and remanded the case for a new trial. *Id.* at *7. In our opinion, we held that by alleging the subjective definition of intoxication in this case, the State was bound to prove it, and the jury charge had impermissibly permitted a conviction on the per se definition. We also held that the trial court erred by including the per se definition of intoxication,

4

concluding that the evidence did not support its inclusion because the retrograde extrapolation evidence was inadequate. *Id.* at *4.

The court of criminal appeals reversed these holdings, concluding that Crenshaw "was convicted under the subjective theory of intoxication as alleged in the information." *Crenshaw*, 378 S.W.3d at 468. The court further held that "including the per se definition of intoxication in the abstract portion of the jury charge did not expand the allegations against" Crenshaw. *Id.*

## IV. ON REMAND

Crenshaw presents two points of error on remand. Crenshaw's first point of error appears to be the exact point of error he raised in the Texas Court of Criminal Appeals. *Id.* at 466. Specifically, Crenshaw argues that "submission of an uncharged allegation by way of definition, even if the charging paragraph is correct, constitutes constitutional error when the State uses that definition to expand the charge beyond that which is alleged in the charging instrument." This is the very argument the court of criminal appeals rejected on petition for discretionary review. *See Id.* at 465. ("[Crenshaw] responds that the submission of an uncharged allegation by way of a definition, even if the charging paragraph is correct, constitutes constitutional error when the State uses that definition to expand the charge beyond that alleged in the charging instrument."). We are bound by the court of criminal appeals's holdings, and we summarily overrule Crenshaw's first point of error. *Wiley v. State*, 112 S.W.3d 173, 175 (Tex. App.—

5

Fort Worth 2003, pet. ref'd) ("[W]e are bound to follow the pronouncements of the court of criminal appeals.").

Crenshaw's second point of error is somewhat difficult to understand. In the table of contents, Crenshaw argues that his point of error two is, "*State v. Barbernell*, 247 S.W.3d 228 does not allow the State to rely on an extrapolation allowing the jury to consider the testimony prohibited by *Mata* to determine the blood alcohol content at the time of driving." But in the body of his brief, Crenshaw states that his point of error two is, "*State v. Barbernell*, 247 S.W.3d 228 does not address the issue of expanding the scope of the prosecution beyond that noticed to the defense in the charging instrument." The majority of Crenshaw's second point is an exact mirror of his first point. Oddly, his point of error one discusses *Mata v. State*, but Crenshaw does not mention *Mata* at all in the body of his second point. *See* 46 S.W.3d 902, 908 (Tex. Crim. App. 2001) (discussing a trial court's gatekeeper function regarding evidence of retrograde extrapolation). But the gist of both of Crenshaw's points (he repeats it in both arguments) is that the State failed to notify him of its "theory of prosecution" by delineating one theory of prosecution (the subjective definition of intoxication) and yet presenting evidence of another (the per se definition of intoxication). All of these subsidiary issues were disposed of in the court of criminal appeals's opinion. *Crenshaw*, 378 S.W.3d at 464. Indeed, the Court stated that the State "went beyond the minimum notice requirement" in its charging instrument. *Id.* at

6

466. The court also overturned our previous holding that "the extrapolation evidence was inadequate" in this case. *Id.* at 464. We overrule Crenshaw's second point of error.

## V. CONCLUSION

Having overruled both of Crenshaw's points of error on remand, we affirm the trial court's judgment.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED: February 27, 2014