

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00447-CR

EDWARD CORNELL KNIGHT                                            APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1377890D

----------

## OPINION

----------

In two points, Appellant Edward Cornell Knight appeals his conviction for aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(1) (West 2011). We affirm.

## Background

In 2014, Appellant and his wife, Nancy,[1] were having marital troubles, had separated, and had been living in separate homes for at least five months. On the night of July 15, 2014, Appellant stopped by the house where Nancy and their then twelve-year-old son, Michael, resided. Although Appellant's appearance there was unexpected—something that Nancy characterized at trial as a recurring problem—his presence was not unwelcome that evening. At some point, he helped himself to some leftover pizza from the stove, and he and Nancy later shared a bath together.

At approximately 10:00 p.m. that evening, Nancy went to bed and Appellant went outside to walk the dog and smoke a cigarette. Both Nancy and Appellant testified that they expected that he would stay the night and they would sleep in the bed together, but at some point she awakened to find that he was not in the house. Before she located him, she found his cell phone in the kitchen, and, according to Nancy, because she had been experiencing "trust issues" with regard to Appellant, she "looked at it to see if [she] could find out something."

After she discovered a text message that confirmed her suspicion that Appellant was cheating on her, she continued in her search for Appellant. She found him lying in the driveway, asleep. Describing herself at that point as being "upset" but not "mad," Nancy testified that she merely "nudged" Appellant to

---

[1]In accordance with rule 9.8, we refer to children and family members by aliases. Tex. R. App. P. 9.8(b) & cmt.

wake him. Appellant, on the other hand, described awakening to the sensation of being struck in the head and "beaten." They both agreed, however, that an argument ensued, that Nancy asked him to leave the house and go to his own home, and that rather than comply with her request, Appellant—for the stated purpose of retrieving his keys—followed Nancy as she retreated back into the house. Nancy locked herself inside the master bathroom, and when she would not let him inside, Appellant responded by punching a hole through the bathroom door.[2]

Nancy eventually opened the door and handed Appellant his pants, which had been in the closet in the bathroom. The two then left the master bathroom and bedroom, and, as she was walking down the hall behind him, Nancy hit Appellant in the back twice with her fist, causing him to fall.

Appellant then warned Nancy that she "better find [his] f**king keys." She did find them—in the door to Appellant's van that was parked outside the house. When Nancy handed the keys to Appellant, he angrily said, "Now I'm going to shoot your ass." Nancy testified that at that point she believed him.

When Appellant went outside to get his gun, Nancy locked and held the garage door shut while Michael locked the front door. Nancy was able to prevent Appellant from opening the garage door, but he was able to use his keys to enter

---

[2]Photos of the damage to the door were admitted into evidence and shown to the jury. At trial, Appellant conceded that he "may have hit the door out of anger." Michael testified that he saw his father "bust[] down the door."

the house through the front door.[3]  When Nancy heard the front door open, she went out the garage door, got into her car, and started backing her car out of the driveway.  As she was leaving, she saw Michael waving to her from the front door, and she stopped, thinking that he would come out and get in the car with her.

Instead, Appellant came out of the house with a gun in his hand and approached Nancy's car.  Nancy testified that she rolled down her car window "maybe an inch or two," and Appellant pointed the gun sideways through the window approximately ten inches away from her head and said, "I'm going to shoot you, b**ch."  For a moment, Appellant lowered the gun, but then he raised it again and pulled the trigger, striking the roof of the car.

Appellant then went back inside the house and started gathering his things, leaving Nancy—who testified that she was in a state of shock—in her car.  When Nancy went back inside the house, Appellant asked her "if [she] wanted to die tonight or tomorrow night," and then he eventually left.

Appellant was arrested and charged with aggravated assault by threat with a deadly weapon.  Tex. Penal Code Ann. § 22.02(a)(1).  A jury found him guilty as charged and he was sentenced to nine years' confinement.

---

[3]At this point, Michael insisted on calling 9-1-1 and did so, over Nancy's initial objections.  The recording of the 9-1-1 call was admitted into evidence and played at trial.  In the recording, Michael informed the call dispatcher that Appellant had threatened Nancy and had said that he "won't stop until he has [Nancy] dead."

**Discussion**

Appellant's points relate to the jury charge. In his first point, Appellant argues that the trial court erred in denying his request to include an instruction as to the lesser-included offense of felony deadly conduct. In his second point, Appellant argues that the trial court's charge as to punishment violated his right to due process.

## A. Felony deadly conduct as a lesser-included offense

In his first point, Appellant argues that the trial court erred by denying his request for an instruction concerning felony deadly conduct as a lesser-included offense in the jury charge for aggravated assault.

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.*

Initially, the trial court included instructions for both misdemeanor deadly conduct and felony deadly conduct in the jury charge. The State objected to the inclusion of the felony-deadly-conduct instruction, relying on the decisions in *Miller v. State*, No. 05-01-00151-CR, No. 05-01-00152-CR, No. 05-01-00153-CR, No. 05-01-00154-CR, 2002 WL 659988, at *2–3 (Tex. App.—Dallas Apr. 23, 2002, no pet.) (not designated for publication), *Rogers v. State*, 38 S.W.3d 725,

5

727–28 (Tex. App.—Texarkana 2001, pet. ref'd), and *Franklin v. State*, 992 S.W.2d 698, 704–06 (Tex. App.—Texarkana 1999, pet. ref'd). In these cases, our sister courts held that felony deadly conduct was not a lesser-included offense of aggravated assault by threat when the indictment charged the defendant with using or exhibiting a weapon. *Miller*, 2002 WL 659988, at *2; *Rogers*, 38 S.W.3d at 727; *Franklin*, 992 S.W.2d at 706 n.5. In so holding, each court pointed out that felony deadly conduct requires that a firearm be discharged, whereas aggravated assault by threat, as it had been charged in those cases, only required proof that the defendant used or exhibited a weapon. *Miller*, 2002 WL 659988, at *2; *Rogers*, 38 S.W.3d at 727–28; *Franklin*, 992 S.W.2d at 709. Thus, as the *Rogers* court noted, because aggravated assault by threat, as charged in that case, required only proof that the defendant exhibited or used a weapon, felony deadly conduct required more facts—proof that the weapon was "fired"—than aggravated assault by threat. 38 S.W.3d at 727–28.

Appellant's counsel argued that these decisions were "counterintuitive" and were not binding on the trial court and that the instruction should be included because the facts "clearly establish that the jury could easily find the felony third degree." He cited no cases to the contrary, nor did he cite any cases which he contended supported his position. The trial court sustained the State's objection and struck the instruction regarding felony deadly conduct.

Neither the court of criminal appeals nor this court has decided the particular question presented in this case—whether felony deadly conduct is a

lesser-included offense of aggravated assault by threat when a defendant was charged with "using or exhibiting" a deadly weapon in the commission of the aggravated assault by threat. In order to answer this question, we will look first to the relevant statutory language. We are also guided by the court of criminal appeals and its approach in making similar determinations regarding lesser-included offenses in other circumstances.

Texas code of criminal procedure article 37.09(1)[4] provides that an offense is a lesser-included offense of another offense if the indictment for the greater offense either (1) alleges all of the elements of the lesser-included offense or (2) alleges elements plus facts (including descriptive averments, such as nonstatutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced. Tex. Code Crim. Proc. Ann. art. 37.09(1); *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g). Enacted in 1973, Article

---

[4]Appellant did not argue to the trial court and does not argue on appeal that felony deadly conduct is a lesser-included offense of aggravated assault by threat pursuant to any other subsections of article 37.09. *See* Tex. Code Crim. Proc. Ann. art. 37.09(2) (West 2006) (providing that an offense is a lesser-included offense if it differs from the charged offense by requiring a less serious injury or risk of injury), 37.09(3) (providing that an offense is a lesser-included if it differs only in respect that it requires a less culpable mental state), 37.09(4) (providing that an attempt to commit the offense charged constitutes a lesser-included offense). We have therefore limited our analysis to the applicability of article 37.09(1), but, as will be discussed later, we do note that 37.09(3) would not apply because the charged offense and the claimed lesser-included offense differ in more than one respect. Thus, the two offenses do not differ *only* in the respect that the claimed lesser-included offense requires a less culpable mental state.

7

37.09 was first addressed by the court of criminal appeals three years later in *Day v. State*, 532 S.W.2d 302 (Tex. Crim. App. 1976). In reviewing the constitutionality of article 37.09, the court first observed that the prior statutory scheme had sometimes allowed for an "obvious absurdity violative of basic principles of due process" because it did not provide the defendant with notice of the elements of the lesser-included offense of which he could be convicted. *Id.* at 313; *see also Slack v. State*, 136 S.W. 1073, 1075 (Tex. Crim. App. 1911) (holding that the Legislature cannot provide "that a person indicted for an offense consisting of one state of facts may be tried and convicted under that indictment of an offense consisting of a different state of facts"). But in holding that the newly-enacted article 37.09 was constitutional, the court made two significant misstatements of law—both of which the court later corrected—implying that the facts of the case should be considered in the analysis.[5] *Day*, 532 S.W.2d at 315–16. These misstatements led to confusion and conflicting opinions in the lower courts as well as within the court of criminal appeals itself that were not resolved for thirty years, until the court finally clarified its position in *Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007).

---

[5]First, the court stated, "On original submission we held that *on the facts of this case* criminal trespass was a lesser included offense to the burglary charged." *Id.* at 315 (emphasis added). And later the court said, "whether one offense bears such a relationship to the offense charged is an issue which must await a case by case determination, both because the statute defines lesser included offenses in terms of the offense charged and because it defines lesser included offenses in terms of *the facts of the case.*" *Id.* at 315–16 (emphasis added).

Prior to *Hall*, the debate had evolved into a question of whether courts should use the "cognate pleadings" approach or the "cognate evidence" approach in determining whether a lesser-included offense existed. *Id.* at 526, 530 n.29, 531 n.31 (listing opinions by the court of criminal appeals using conflicting approaches). In a cognate pleadings analysis, the court looks to the facts and elements as alleged in the charging instrument, not just to the statutory elements of the offense, to determine whether a lesser-included offense exists. *Id.* But with a cognate evidence approach, courts look not only to the charging instrument but also to the facts adduced at trial in making this determination. *Id.* In *Hall,* the court of criminal appeals, acknowledging its earlier misstatements, clarified that courts should not consider the facts adduced at trial but instead should look exclusively at the facts and elements as alleged in the charging instrument, thus adopting the cognate pleadings standard as the proper analysis in evaluating whether a lesser-included offense exists:

> [t]he first step in the lesser-included-offense analysis, determining whether an offense is a lesser-included offense of the alleged offense, is a question of law. It does not depend on the evidence to be produced at the trial. It may be, and to provide notice to the defendant must be, capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense.

*Id.* at 535–36.[6]

---

[6]As the court reiterated later in *Watson*, whether a descriptive averment in the indictment for the greater offense is identical to an element of the lesser offense, or an element of the lesser offense may be deduced from a descriptive

Although it may seem, as Appellant contends, counterintuitive at first glance, using the cognate pleadings standard, felony deadly conduct is not always a lesser-included offense of aggravated assault. *See id.* at 531. It can be, depending on how the aggravated assault is charged, but it is not a lesser-included offense in all circumstances. *Id.* Using a cognate pleadings approach to the question, the answer will turn on how the aggravated assault is charged.

A person commits aggravated assault if he intentionally or knowingly threatens another, including his spouse, with bodily injury and uses or exhibits a deadly weapon during the commission of the assault. Tex. Penal Code Ann. § 22.02(a)(2). Whereas, a person commits the felony offense of deadly conduct "if he knowingly discharges a firearm at or in the direction of: (1) one or more individuals; or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." *Id.* § 22.05(b) (West 2011).

Here, the indictment charged Appellant with "us[ing] or exhibit[ing] a deadly weapon during the commission of the assault." Thus, in this case, even though the evidence established that Appellant did discharge a firearm, this was not a fact that the State was required to prove to support a conviction for aggravated

---

averment in the indictment for the greater offense, should be analyzed in determining whether all of the elements of the lesser offense are contained within the allegations of the greater offense. 306 S.W.3d at 273.

assault by threat.[7] *Id.* § 22.05(b). Because, as charged, the State was only required to prove that Appellant exhibited the gun, one element of felony deadly conduct—discharge of the firearm—was not required to be proved to support a conviction for the offense of aggravated assault by threat.[8] Thus, using the cognate pleadings analysis, felony deadly conduct is not a lesser-included offense of aggravated assault by threat, as charged in this case. *See, e.g.*, *Watson*, 306 S.W.3d at 273.[9]

Using a similar analysis, at least four of our sister courts have reached the same result, holding that felony deadly conduct was not a lesser-included offense of aggravated assault by threat as charged. On facts very similar to the facts here, in *Miller*, the Dallas court held that felony deadly conduct was not a lesser-included offense of aggravated assault by threat because the indictment did not require discharge of a firearm. Although, as here, the evidence showed that the

---

[7]This is not to say that proof that the weapon was discharged would not have met the State's burden to prove aggravated assault. Rather, the determination is whether the charged offense *requires* proof of each element of the claimed lesser-included offense. *See, e.g.*, *Miller*, 2002 WL 659988 at *3.

[8]Since the evidence at trial proved the actual discharge of a weapon, under a cognate evidence standard our conclusion would likely be different. However, using the proper standard, we cannot consider the facts as developed at trial. *Hall*, 225 S.W.3d at 535–36.

[9]In fact, if the trial court had retained the instruction as to felony deadly conduct and Appellant had been convicted of the same, he might then have been heard to complain on appeal of a due process rights violation because the indictment did not include the vital allegation that he discharged a firearm in Nancy's direction. *See Hall*, 225 S.W.3d at 535–36.

11

defendant did fire a gun in the direction of the complainants, the court nevertheless noted that "the determination of whether an offense is a lesser included offense of another offense depends on a comparison of their elements, not the evidence at trial." *Miller*, 2002 WL 659988 at *3 (citing *Jacob v. State*, 892 S.W.2d 905, 908 (Tex. Crim. App. 1995)); *see also Dugger v. State*, No. 05-08-00469-CR, No. 05-08-00470-CR, No. 05-08-00471-CR, 2009 WL 3298172, at *8 (Tex. App.—Dallas Oct. 15, 2009, no pet.) (not designated for publication) (holding that defendant was not entitled to instruction on felony deadly conduct where indictment for aggravated assault by threat did not require discharge of a firearm).

In *Rogers*, the evidence showed that the defendant accosted a woman while she was sitting in her car by pointing a gun at the car window, firing three times, and shattering the window without injuring her. 38 S.W.3d at 727. The Texarkana court, identifying yet another element of felony deadly conduct that was not shared by the charge of aggravated assault, held that Rogers was not entitled to an instruction of felony deadly conduct because to prove felony deadly conduct, the State must prove "not only that a weapon was used or exhibited, but also that it was fired in the direction of the complainant." *Id.* at 727–28; *see also Franklin*, 992 S.W.2d at 706 n.5 ("Felony deadly conduct requires proof that the defendant 'discharge[d] a firearm at or in the direction of,' while aggravated assault only requires proof that the defendant used or exhibited a firearm"). While the facts in *Rogers* showed that the gun was fired in the direction of the

12

complainant—at a car window, the only thing that separated the complainant from the defendant and his gun—as the court pointed out, the discharging of a firearm in the direction of the complainant constituted "more facts than [were] required to prove aggravated assault" in the context of that case. 38 S.W.3d at 728.

Both the El Paso and Austin courts have used reasoning similar to that of the *Rogers* and *Miller* courts in holding that felony deadly conduct was not a lesser-included offense of aggravated assault by threat. *See Potts v. State*, No. 03-05-00009-CR, 2006 WL 664211, at *3 (Tex. App.—Austin Mar. 17, 2006, pet. ref'd) (mem. op., not designated for publication); *Brewer v. State*, No. 08-00-00426-CR, 2002 WL 265817, at *5 (Tex. App.—El Paso Feb. 26, 2002, no pet.) (not designated for publication). In both cases, even though the appellants were charged with aggravated assault by threat and use of a firearm, the courts held that felony deadly conduct was not a lesser-included offense because it required more, i.e., that a weapon be fired at or near an individual or physical entity. *Potts*, 2006 WL 664211, at *3; *Brewer*, 2002 WL 265817, at *5.

While at first blush *Wilkerson v. State* appears to hold to the contrary, this holding finds its genesis in the same analysis we use here. In *Wilkerson*, the Waco court held that felony deadly conduct was a lesser-included offense, but this determination was based upon the actual allegations included in the indictment, that the appellant "threatened the complainant with imminent bodily injury *by discharging a firearm in his direction*." No. 10-09-00057-CR, 2010 WL

13

3434194, at *3 (Tex. App.—Waco Sept. 1, 2010, no pet.) (mem. op., not designated for publication). Because "[t]his descriptive averment [was] identical to the statutory elements for [felony] deadly conduct," the court held that felony deadly conduct was a lesser-included offense as charged. *Id.*

Appellant points us to *Hage v. State* in support of his position. No. 08-10-00270-CR, 2013 WL 1846669, at *6 (Tex. App.—El Paso Apr. 30, 2013, no pet.) (not designated for publication). Although *Hage* was decided six years after *Hall*, the court still employed a cognate evidence, rather than a cognate pleadings, analysis in determining that felony deadly conduct was a lesser-included offense of aggravated assault by threat on a public servant in that case.[10] *Id.* Because the *Hage* court failed to follow *Hall* in analyzing this issue, we consider *Hage* unpersuasive.[11]

Finally, in his reply brief, Appellant relies on *State v. Meru* to argue that the indictment's allegation that he *used* a firearm is the "functional equivalent" of an allegation that he *discharged* a firearm. 414 S.W.3d 159, 162 (Tex. Crim. App. 2013) (employing a "functional-equivalence" test when examining the charging instrument from a cognate pleadings perspective and holding that "the elements

---

[10]The court ultimately concluded that the evidence did not support a finding that the defendant acted with the required mental state to warrant an instruction on felony deadly conduct. *Id.*

[11]Likewise, *Honeycutt v. State*, another case on which Appellant relies, applied a cognate evidence standard. 82 S.W.3d 545, 548–49 (Tex. App.—San Antonio 2002, pet. ref'd). For that reason, we are not guided by the analysis used in *Honneycutt* or its holding.

14

of the lesser-included offense do not have to be pleaded in the indictment if they can be deduced from facts alleged in the indictment"). Even assuming this point has been properly raised, under a cognate pleadings analysis, we need not reach this point. Since the indictment in this case authorized conviction for merely exhibiting the weapon, even assuming, without deciding, that the specific act of discharging a firearm could be logically deduced from a general allegation of "use," such use of a firearm still requires more proof than was required to prove aggravated assault as charged here.

For the above reasons, we hold that the trial court did not err in declining to include an instruction of felony deadly conduct and overrule Appellant's first point.

## B. Punishment jury charge

In his second point, Appellant argues that his rights to due process and due course of law were violated by the inclusion of statutorily-required language regarding good conduct time and parole in the jury charge at punishment. Tex. Code Crim. Proc. Ann. art. 37.07 § 4(a) (West Supp. 2016) (providing that certain instructions shall be given regarding good conduct time and parole in cases when the jury has found the defendant guilty of certain offenses, including a crime in which a deadly weapon was used or exhibited). Appellant admits in his briefing that the court of criminal appeals has considered and rejected a similar argument in *Luquis v. State*, 72 S.W.3d 355 (Tex. Crim. App. 2002), and notes that he has raised this complaint to preserve the issue for further review.

15

*Luquis* held that the instruction required by article 37.07, section 4(a) does not violate a defendant's due process or due course of law rights. *Id.* at 364–68. In so holding, the court noted that the statutorily-provided instruction "informs the jury of the existence of good conduct time, briefly describes that concept, and explicitly tells the jury not to apply that concept to the particular defendant" and that we assume that the jury followed the instructions as given. *Id*. at 365. We do not have discretion to reject the holdings of the court of criminal appeals. *See State ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App.), *cert. denied*, 404 U.S. 910 (1971); *Crenshaw v. State*, 424 S.W.3d 753, 755 (Tex. App.—Fort Worth 2014, no pet.). We therefore overrule Appellant's second point. *See also Sanders v. State*, 255 S.W.3d 754, 765–66 (Tex. App.—Fort Worth 2008, pet. ref'd) (following *Luquis*).

## Conclusion

Having overruled both of Appellant's points, we affirm the judgment of the trial court.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  GARDNER, WALKER, and SUDDERTH, JJ.

WALKER, J., concurs without opinion.

PUBLISH

DELIVERED:  October 27, 2016

16