

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00196-CR

_____

CAMERON PHILLIP ESPARZA, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1510954R

---

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

In two points, Cameron Phillip Esparza appeals his conviction and resulting 40-year sentence for knowingly causing serious bodily injury to a child. *See* Tex. Penal Code Ann. § 22.04(a)(1). He first argues that the trial court violated his right to confront witnesses against him by wrongly limiting his cross-examination of one of the State's witnesses, claiming that he was entitled to delve into that witness's alleged racial or ethnic biases; second, he argues punishment-charge error, contending that he was harmed by the trial court's including a good-conduct-time instruction when the nature of his conviction is such that he cannot accumulate good-time credit.

We will affirm.

## Background

Because Esparza does not challenge the evidentiary sufficiency underlying his conviction, we need not recount the facts in great detail. In the summer of 2013, Esparza had a live-in relationship with H.R., who was the mother of then-one-year-old L.F. from a previous relationship; the three of them lived at a BudgetStay Suites in Arlington.[1] H.R.'s father (and L.F.'s grandfather), J.R., was an onsite maintenance man at the BudgetStay, where he and his girlfriend T.D. lived in another unit.[2]

---

[1]We use initials rather than actual names for the minor victim and his family members. *See* Tex. R. App. P. 9.10(a)(3).

[2]In his first appellate point, Esparza complains about limits put on T.D.'s cross-examination.

Late in the afternoon of August 1, 2013, H.R., L.F., and Esparza went to eat at a McDonald's. L.F. appeared to be fine, by all accounts. The three returned to the BudgetStay, where H.R. got ready for her job working evenings and nights at a hotel near the airport. H.R. left L.F. in Esparza's care around 8:15 p.m. Both J.R. and T.D. had brief separate interactions with Esparza during the course of the evening, which each described as involving Esparza's acting oddly.

Shortly before midnight, J.R. and T.D. saw Esparza again, when he showed up at J.R.'s apartment and asked to use their phone to call H.R. (Esparza did not have a working telephone.) After H.R. spoke with either Esparza or J.R. or both—the record is not entirely clear—H.R. asked J.R. and T.D. to check on L.F.

J.R. and T.D. found L.F. lying on the bed in Esparza and H.R.'s room, apparently dead. Carrying L.F., they rushed to the motel office and asked Kalpesh Patel, the manager, to call 911. Patel testified that L.F. appeared to be dead, but Patel called 911 and relayed instructions from the operator to J.R. about performing CPR (cardiopulmonary resuscitation) on L.F. According to Patel, J.R. was "not pressing hard" on L.F., as if he was afraid he might hurt the child, a fear that J.R. confirmed. J.R. performed CPR on L.F. for only a "few seconds" before an officer arrived and took over.

At trial, that officer—Officer Peter Hughes—described arriving at the BudgetStay around 12:25 a.m. on August 2, 2013, and taking over CPR from J.R. Although L.F. showed "no signs of life," Officer Hughes performed CPR until the

3

ambulance arrived. When asked why he was doing CPR on a body that was "cold to the touch," with "open," "lifeless" eyes, Officer Hughes responded that "you always hold out hope for a – for a child."

L.F. was not resuscitated.

Dr. Tasha Greenberg, who autopsied L.F.'s body, testified that L.F. had visible injuries, but she opined that he was already dead when CPR was administered.[3] Dr. Greenberg described multiple small injuries to L.F.'s head, as well as abdominal bruising and 36 rib fractures that varied in age. L.F.'s liver was lacerated, and his spleen, lung, and adrenal glands were injured, all of which indicated blunt-force trauma that occurred before death. In Dr. Greenberg's opinion, L.F. was probably already dead when 911 was called and was definitely so by the time the paramedics arrived.

The jury charge instructed the jury on capital murder and on four lesser-included offenses. The jury returned a guilty verdict on the lesser-included offense of knowingly causing serious bodily injury to a child and, after the trial's punishment phase, recommended that Esparza be sentenced to 40 years' imprisonment on this first-degree felony. *See* Tex. Penal Code Ann. § 22.04(e). The trial court sentenced Esparza accordingly.

---

[3]Esparza theorized at trial that J.R. had performed CPR too vigorously, fatally injuring L.F. J.R. himself testified that he "felt like [he] did something wrong" and expressed regret: "And I still do [feel that way], I'm sorry."

4

Esparza has framed his two "points of error" this way:

- "Appellant's right to confront the witnesses against him was violated when the trial court limited his cross[-]examination of a State witness."

- "The trial court's jury charge on punishment is violative of Appellant's rights to due process and due course of law."

**Discussion**

*Point One: Right to confront witnesses.*

We review for an abuse of discretion a trial court's decision to exclude evidence by, for example, limiting cross-examination, and we will uphold that decision if it falls within the "zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A defendant's Sixth Amendment right to confront the witnesses against him, while broad, is not unfettered. *Id.* at 909–10; U.S. Const. amend. VI. Rather, a trial court may impose reasonable limits on confrontation—that is, on cross-examination—if concerns exist about such things as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986); *Johnson*, 490 S.W.3d at 910. Nonetheless, although a defendant does not have an "absolute right to impeach" a witness's general credibility, "the Constitution could be offended if a state evidentiary rule prohibited the defendant from cross-examining a witness concerning possible motives, biases, and prejudices to

5

such an extent he could not present a vital defensive theory." *Johnson*, 490 S.W.3d at 910.

Here, the trial court did not allow Esparza to cross-examine T.D. about her racial or ethnic biases. T.D. was the only witness to testify that on the night L.F. died, Esparza had allegedly told her that "he didn't want the baby no more. He didn't want to take care of the baby no more."[4] Particularly because of that single-sourced comment, Esparza contends that it was critical that he be allowed to cross-examine T.D. about a pretrial statement she had volunteered to one of the prosecutors, which the prosecutor memorialized in an undated email sent to defense counsel before the trial started: "[T.D.] has said that she is kind of a racist. But she does not have a problem with Mexicans."[5]

After Esparza told the trial court that he intended to cross-examine T.D. about that sentiment when trial resumed the next morning,[6] both Esparza and the State questioned T.D. outside the jury's presence, eliciting the following information:

---

[4]T.D. also claimed that J.R. had performed CPR properly on L.F., testimony that BudgetStay manager Patel corroborated by saying that J.R. was "not pressing hard" on L.F. and seemed to be afraid of hurting him during the "few seconds" J.R. administered CPR before the officer arrived.

[5]T.D. is Caucasian, as are J.R. and H.R. L.F. had a Hispanic father and so was of mixed ethnicity, and Esparza is Hispanic.

[6]It was at the end of a day of trial when Esparza voiced his intent to "get . . . into that" subject with T.D. the next morning, to which the trial court responded, "Well, let's go ahead and do it now. Go ahead and make your bill on her right now."

6

- T.D. had been "raped several times by a black person";

- T.D. was raised by a stepfather who "did not like blacks";

- Her stepfather's being "racist" was a "big thing in [her] family for a while";

- T.D. was prejudiced only against "[b]lacks," although she had been raised "not to mix colors, you know, like whites stay with white, Mexicans stay with Mexican," but that was a view T.D. had held "when [she] was growing up with [her] family";

- Age 52 at the time of trial, T.D. was "different now," "[n]ot really" believing anymore that races should not mix (though she equivocated);

- T.D. was not bothered by the fact that H.R. and Esparza were a "mixed couple"; but

- T.D. could not explain why she had volunteered to the prosecutor that she was "a little bit racist, kind of racist."

After the State objected on relevance and improper-impeachment grounds to the jury's hearing this proposed testimony, the trial court broadly sustained the State's objections:

> THE COURT: Well, it is improper impeachment. It is impeachment on collateral matter. It's collateral impeachment. That's what it really is.
>
> [DEFENSE COUNSEL]: Your Honor, it shows bias or prejudice.
>
> THE COURT: Yeah, not against your client, it didn't.

---

Esparza did so, and he and the State questioned T.D. more the next day, again outside the jury's presence.

It's also a 412 violation. You are not going to get into this – this witness's being raped or – or anything like that. So you're not going to ask it.

And I'm going to make a finding that the probative value is substantially outweighed by the prejudicial effect. Whether – whether or not she was raised one way doesn't have any relevance in this case.

It's – it's either – so I'll sustain the [objection] either on relevance and/or on impeachment on a collateral matter or collateral impeachment.

Esparza did not make a Confrontation Clause or other constitutional argument in the trial court for why T.D.'s testimony was ostensibly admissible, asserting only that her testimony, if allowed, would reveal her bias or prejudice.

As with many error-preservation situations, a defendant must first have objected in the trial court before he may complain on appeal, even about an alleged constitutional infringement such as a Confrontation Clause violation. *See Craven v. State*, 579 S.W.3d 784, 788 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Because appellant failed to raise his Confrontation-Clause objection at the time the lab report was offered into evidence, appellant has waived this complaint on appeal."). Similar to a recent case from the court of criminal appeals, "[n]othing in the record indicates that Appellant properly put the trial judge on notice that he was making a Confrontation Clause argument in support of admitting the excluded evidence." *Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018). We conclude that Esparza did not preserve his constitution-related appellate complaint.

Even so, assuming that Esparza had preserved his complaint, a trial court may exclude evidence that is "only marginally relevant." *Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435. Whether T.D. was biased against African-Americans was irrelevant to whether she was motivated to testify falsely against Esparza, a Hispanic man. *See Gonzales v. State*, 929 S.W.2d 546, 551 (Tex. App.—Austin 1996, pet. ref'd) (holding no abuse of discretion when the trial court kept out evidence of a witness's racial and ethnic slurs against African-Americans and Hispanics, which he uttered while kicking an African-American detainee; the statements were more probative of prejudice against African-Americans than against the defendant's ethnic group and were of "marginal relevance"). And Esparza did not show how T.D.'s prejudice against mixed racial or ethnic couples—assuming she still had any—played any role in her testimony. *See Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435 ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."); *Martinez v. State*, No. 14-98-01138-CR, 2000 WL 767825, at *5, *6 (Tex. App.—Houston [14th Dist.] June 15, 2000, pet. ref'd) (not designated for publication) (noting that a party wishing to impeach a witness for bias must "attempt to show that the witness's attitude is such that he is likely to favor or disfavor a particular litigant's position for reasons unrelated to the merits of the suit," and holding that appellant failed to show (1) that the witness's

9

"outbursts demonstrated bias or prejudice against homosexuals in general" and (2) that the outbursts showed that the witness was "falsely testifying against appellant because he hated homosexuals").

Because Esparza has not preserved his complaint and has not shown an abuse of discretion here even if he had, we overrule his first point.

### Point Two: Jury charge on punishment.

Esparza next complains that the punishment charge harmed him by instructing the jury that "if sentenced to a term of imprisonment, [Esparza] may earn time off the period of incarceration imposed through the award of good conduct time." The offense of which Esparza was convicted, though, precludes accumulating good-conduct credit for parole purposes. *See* Tex. Gov't Code Ann. § 508.145(d)(1)(A); Tex. Code Crim. Proc. Ann. art. 42A.054(a)(10). Nonetheless, the Code of Criminal Procedure mandates this instruction's wording, as Esparza concedes, even if it is futile and potentially confusing in a case such as this one. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a); *Luquis v. State*, 72 S.W.3d 355, 363–65 (Tex. Crim. App. 2002); *Knight v. State*, 504 S.W.3d 524, 532 (Tex. App.—Fort Worth 2016, pet. ref'd). Esparza acknowledges that controlling precedent is against him but has raised this issue solely to preserve it for further review.

Our earlier discussion of *Luquis* answers this issue with a brevity that we cannot improve upon, and so we will simply quote it:

10

*Luquis* held that the instruction required by article 37.07, section 4(a) does not violate a defendant's due process or due course of law rights. In so holding, the court noted that the statutorily[]provided instruction "informs the jury of the existence of good conduct time, briefly describes that concept, and explicitly tells the jury not to apply that concept to the particular defendant" and that we assume that the jury followed the instructions as given. We do not have discretion to reject the holdings of the court of criminal appeals. We therefore overrule Appellant's second point.

*Knight*, 504 S.W.3d at 532 (citations omitted). We overrule Esparza's second point.

## Conclusion

Having overruled Esparza's two appellate points, we affirm the judgment below.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 31, 2019