

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00253-CR

---

TONY LEN NICHOLS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 181st District Court
Potter County, Texas
Trial Court No. 083691-B-CR, Honorable Titiana D. Frausto, Presiding

---

June 10, 2026

## MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and PRATT, JJ.

Appellant, Tony Len Nichols, appeals from his conviction by jury of the offense of aggravated assault on a public servant[1] and the resulting sentence of fifteen years' imprisonment. Appellant challenges the sufficiency of the evidence to support his conviction, the trial court's refusal to submit Appellant's requested instructions in the

---

[1] *See* TEX. PENAL CODE § 22.02 (a), (b)(2)(B).

charge, and the judgment's provision for recovery of attorney's fees. We modify the judgment in part and affirm as modified.

## BACKGROUND

On an October morning in 2022, Lorrie Eads was going about her work as a housekeeper at a La Quinta hotel in Amarillo when she heard tires squealing. She stepped outside to investigate and saw a gray van screech to a stop. Appellant exited the vehicle, along with his girlfriend. Appellant, who appeared angry and drunk, said that a car dealer had "screwed him over" but "he would show them." He opened his jacket, revealing a gun. Eads observed that Appellant had a "pretty violent" demeanor and that his girlfriend seemed "terrified." Eads told him to calm down. She testified that Appellant then went to his hotel room, where he held his girlfriend and a dog as hostages.

Eads went to the hotel office to report the incident. Amarillo police were called to the scene, where they heard screaming from inside Appellant's room. Appellant refused to open the door and told the officers to go away. Police treated the matter as a hostage situation and called in the Special Weapons and Tactics (SWAT) Unit. Officers on the scene were uniformed and identifiable as law enforcement officers. Appellant was agitated and made numerous verbal threats against the police officers. Eventually, Appellant's girlfriend was released from the room, and the police then treated the matter as a barricaded individual situation. Appellant called 911 and spoke with police negotiators off and on over the course of the next several hours. Officers on the scene observed Appellant watching them from his hotel room window, and Appellant told negotiators that he was going to shoot the officers if they did not leave. The police

2

obtained a warrant for Appellant's arrest for unlawful restraint. When their negotiations did not lead to Appellant's exit, they broke the window to Appellant's room and launched a canister of tear gas inside. Appellant did not surrender, so police delivered another chemical agent, firing 40 mm Ferret rounds into the room. Appellant then fired his gun out the window in the direction of the police officers. Appellant eventually exited his room and was struck by "less lethal" projectiles fired by the police. He surrendered and was taken into custody. Appellant was charged with the first-degree felony offense of aggravated assault on a public servant.

**ANALYSIS**

Sufficiency of the Evidence

By his first issue, Appellant contends the evidence was insufficient to support his conviction because he did not threaten Bryan Gaitan, the peace officer named in the indictment. When we review the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). We presume that the jury resolved any conflicting inferences in favor of the verdict and we defer to such resolutions. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). A jury is permitted to make reasonable inferences from the evidence presented. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007).

3

As charged in this case, a person commits the first-degree felony offense of aggravated assault on a public servant by threat when (1) he commits assault by "intentionally or knowingly threaten[ing] another with imminent bodily injury," (2) he "uses or exhibits a deadly weapon during the commission of the assault," and (3) the offense is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty . . . ." *See* TEX. PENAL CODE §§ 22.01(a)(2), .02(a)(2), (b)(2)(B). A threat need not be verbal but may be communicated by action or conduct. *United States v. Taylor*, 596 U.S. 845, 855, 142 S. Ct. 2015, 213 L. Ed. 2d 349 (2022); *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984). Moreover, "there is no statutory requirement that a victim must instantaneously perceive or receive th[e] threat of imminent bodily injury as the actor is performing it." *Olivas v. State*, 203 S.W.3d 341, 350–51 (Tex. Crim. App. 2006).

Here, the indictment alleged that Appellant "did then and there, intentionally or knowingly threaten BRYAN GAITAN with imminent bodily injury, and did use or exhibit a deadly weapon, . . . when [Appellant] knew BRYAN GAITAN was a public servant . . . ." Appellant argues that he did not speak to, threaten bodily injury to, wield a gun at, or communicate any threat to Gaitan. Appellant acknowledges that "[t]here was ample evidence that [he] discharged a weapon around or in the vicinity of Gaitan, possibly constituting deadly conduct," but contends that "there was no threat communicated to Gaitan."

The evidence presented at trial showed that Appellant made several threats against the police. Amarillo Police Department Sergeant Joel Young, who spoke with Appellant via telephone multiple times over the course of the hours-long incident, testified

4

that Appellant made numerous threats to shoot officers. Officer Hamilton Stanfield, a member of APD's crisis negotiation team, also spoke to Appellant via telephone. The jury heard recordings of some of these calls, which included Appellant making statements such as, "If these cops don't leave, I'm gonna kill 'em," "I will shoot these motherf---ers, and I don't care if I die," and "I'm gonna run out the door and just f---ing fire on 'em." The negotiators who were communicating with Appellant relayed this information to other officers involved. APD Corporal Michael Vigil, who was on the scene with SWAT, testified, "The radio communication was that this guy had made threats to kill police if we tried to come in. He was ready to die. He wanted police to shoot him. He'd shoot us between the eyes, things of that nature." Officer Gaitan was aware of Appellant's threats. He testified that Appellant "was on the phone making several threats to kill police."

Officer Gaitan and other officers were within Appellant's field of view during the incident. They saw Appellant watching them from his hotel room window. Officer Gaitan testified that he observed Appellant at the window "a couple of times." Officer Gaitan felt that Appellant was "actively looking to see where [the officers] were." When Appellant fired shots through the window in the direction of the police officers, Officer Gaitan "believed at that point that [he] was trying to shoot at us, or shoot at – or shoot one of us." Officer Gaitan testified that he believed that he and other officers were Appellant's intended targets and that he thought he was going to be shot.

Although Appellant may not have named Gaitan specifically, Appellant expressed a desire to shoot police officers. Appellant monitored the officers' movements and fired his weapon in the direction of police officers on the scene, including Gaitan. Officer Gaitan was aware of Appellant's verbal threats and was subjected to Appellant's conduct

5

consistent with those threats. Officer Gaitan believed that he and other officers were the intended targets of Appellant's gunfire. This evidence is more than sufficient to permit a rational trier of fact to conclude beyond a reasonable doubt that Appellant committed the offense as alleged in the indictment. *See, e.g., Paez v. State*, 709 S.W.3d 718, 725 (Tex. App.—Amarillo 2025, pet. ref'd) (rejecting defendant's argument that his firing of weapon in complainant's direction did not threaten complainant, a bystander, because shots were intended for rival gang members); *see also Robbins v. State*, 145 S.W.3d 306, 314 (Tex. App.—El Paso 2004, pet. ref'd) (evidence defendant fired gun in officer's direction established aggravated assault). Accordingly, we overrule Appellant's first issue.

Jury Charge

In his second issue, Appellant asserts that the trial court reversibly erred by refusing to submit Appellant's requested changes in its charge to the jury. During the charge conference, counsel for Appellant requested that the trial court define the term "threat" in the charge and also requested that the charge include a lesser-included offense instruction for deadly conduct. The trial court denied both requests.

When we review a claim of jury charge error, we first determine whether any error occurred; if error did not occur, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.*; *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). If the jury charge error has been properly preserved by an objection

6

or request for instruction, reversal is required if the appellant has suffered "some harm" from the error. *Almanza*, 686 S.W.2d at 171.

At trial, Appellant's counsel requested that the jury charge include the following definition of "threat": "A threat is when a person threatens to commit any offense involving violence to any person or property with intent to place any person in fear of imminent bodily injury." The State argued that the term was not defined in the Penal Code, and the jury was free to give it its common meaning. On appeal, Appellant asserts that he was harmed by the trial court's refusal to include this definition because the charge "left open to interpretation what constituted an actual threat . . . ."

A trial judge is required to give the jury a written charge setting forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14. Statutorily defined terms constitute law applicable to the case and must be included in the court's charge. *Celis v. State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013). It is generally impermissible, however, for the trial court to define terms in the jury charge that are not statutorily defined, as such terms are not considered to be "applicable law" under article 36.14. *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). Terms that are not statutorily defined generally should be "read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE § 311.011(a). Moreover, jurors "may 'freely read [undefined] statutory language to have any meaning which is acceptable in common parlance.'" *Kirsch*, 357 S.W.3d at 650 (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)).

The word "threat" is not defined by the statute. Moreover, Appellant has not directed this Court to any authority indicating that "threat" has acquired a special legal or technical meaning. *See Olivas*, 203 S.W.3d at 345 (Court of Criminal Appeals looked to "common, ordinary meaning" of term "threaten," showing that term does not have special meaning requiring that it be defined for jury). Therefore, the jury was properly allowed to assign the term any meaning ascribed in common parlance. *Kirsch*, 357 S.W.3d at 650. We conclude that the trial court did not err by declining to define "threat" in the jury charge.

Appellant's counsel also requested that the jury charge include "a lesser included instruction for the offense of deadly conduct, discharging a firearm." The trial court denied Appellant's request, which Appellant contends was error. The State argues that Appellant failed to preserve this argument for our review. Assuming without deciding that Appellant properly preserved the issue, we conclude that Appellant's claim is without merit.

We review the trial court's denial of a lesser-included-offense instruction for abuse of discretion. *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. 2023). To determine whether a defendant is entitled to a lesser-included-offense instruction, we apply a two-part analysis. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). We first compare the elements of the alleged lesser-included offense with the elements of the charged offense and any descriptive averments in the indictment. *Safian v. State*, 543 S.W.3d 216, 220 (Tex. Crim. App. 2018). If proof of the lesser offense is included within proof of the greater offense, the first step is satisfied. TEX. CODE CRIM. PROC. art. 37.09(1); *id*. Next, there must be a determination of whether there is some evidence in the record that would permit a rational jury to find the defendant guilty of only the lesser offense. *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011).

8

As is relevant here, one of the definitions of a lesser-included offense is one "established by proof of the same or less than all the facts required to establish the commission of the offense charged . . . ." TEX. CODE CRIM. PROC. art. 37.09(1); *see Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007). We use the cognate-pleadings approach to evaluate whether an offense qualifies as a lesser-included offense for the purpose of submitting it in the charge to the jury. *See Crawford v. State*, 710 S.W.3d 774, 782–83 (Tex. Crim. App. 2025). Under this approach, a lesser offense is included if the charging instrument (1) alleges all of the elements of the lesser-included offense or (2) alleges elements plus facts from which all of the elements of the lesser-included offense may be deduced. *Id.*

Felony deadly conduct can be, but is not always, a lesser-included offense of aggravated assault. *See Hall*, 225 S.W.3d at 531. A person commits aggravated assault if he intentionally or knowingly threatens another with bodily injury and uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE § 22.02(a)(2). A person commits felony deadly conduct "if he knowingly discharges a firearm at or in the direction of: (1) one or more individuals; or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." *Id.* § 22.05(b). In this case, the indictment alleged that Appellant "did use or exhibit a deadly weapon, namely a firearm, during the commission of the assault" on the officer. Even though the evidence established that Appellant discharged a firearm, the State was not required to prove that fact to support a conviction for aggravated assault by threat. *Id.* As charged, the State was only required to prove that Appellant exhibited the firearm. Discharge of the firearm, an element of felony deadly conduct, was not required to be proved. Thus,

9

using the cognate pleadings analysis, felony deadly conduct is not a lesser-included offense of aggravated assault by threat as charged in this case, and the trial court correctly denied its inclusion in the charge. *Knight v. State*, 504 S.W.3d 524, 530 (Tex. App.—Fort Worth 2016, pet. ref'd); *see also Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g) (per curiam).

Therefore, we conclude that the trial court did not err in declining to make either of Appellant's requested changes to the jury charge. Finding no error, we need not conduct a harm analysis. *Kirsch*, 357 S.W.3d at 649. We overrule Appellant's second issue.

Attorney's Fees

In his final issue, Appellant seeks modification of the judgment to delete any provision for attorney's fees. Appellant was determined by the trial court to be indigent and the record does not reflect that Appellant's indigency status changed. The Bill of Cost attached to the judgment in this case reflects a charge of $1,500 in attorney's fees, albeit with a balance owing of $0. The Bill of Cost also includes the following two provisions:

> Please Note – other fees may be applied at a later date: Upon this office reviewing the Judgment, . . . Order to Pay court appointed attorney.

> Attorney fees are not collected until the court finds the defendant able to pay, pursuant to TXCCP Art. 26.05 section (g).

Appellant requests that the judgment and Bill of Cost be modified to avoid the potential assessment of attorney's fees. The State agrees that such a modification is appropriate in this case.

10

A trial court errs if it orders the reimbursement of court-appointed attorney's fees in the absence of record evidence demonstrating a defendant's financial resources to offset the costs of legal services. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). Here, nothing in the record shows that the trial court found Appellant had the financial resources to pay as required by article 26.05(g) of the Code of Criminal Procedure. Accordingly, the reference to an assessment of attorney's fees should be deleted. *See Fugett v. State*, 721 S.W.3d 120, 123 (Tex. App.—Amarillo 2025, no pet.) (reforming judgment under similar circumstances for accuracy).

## CONCLUSION

We overrule Appellant's first two issues. We sustain Appellant's third issue regarding the provision for attorney's fees and modify the judgment to delete the reference to the assessment of attorney's fees. We affirm the trial court's judgment as modified.

Judy C. Parker
Chief Justice

Do not publish.

11