COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LILIA V. MENDOZA, | § | |
| Appellant, | § | |
| | | No. 08-09-00120-CV |
| v. | § | |
| | | Appeal from the |
| | § | |
| VICTOR M. RAMIREZ, SANTIAGO | | 49th Judicial District Court |
| RAMIREZ, JR., OSWALDO H. | § | |
| RAMIREZ, JR., AND XAVIER | | of Zapata County, Texas |
| RAMIREZ As Co-Trustees For The | § | |
| RAMIREZ MINERAL TRUST, AND | | (TC# 3342) |
| VILLAREAL/ZAPATA, | § | |
| Appellees. | § | |

**O P I N I O N**

Appellant, Lilia Mendoza, appeals the trial court's grant of summary judgment in favor of

Appellees, Victor M. Ramirez, et al, otherwise known as the Ramirez Mineral Trust ("RMT"),

with respect to the title to the B-2 tract. On appeal, Ms. Mendoza argues the trial court erred

because *res judicata* elements were not satisfied for a grant of summary judgment based on a

prior federal condemnation proceeding, and even if RMT or its predecessors acquired title to the

tract, genuine issues of material fact exist as to whether Ms. Mendoza and the Villarreal family

later acquired title to the property through adverse possession. We affirm.

In 1994, RMT filed an action in a Zapata County trial court against Enron Oil & Gas

Company ("Enron"), Fidel Villarreal and Andrea Villarreal, J. Juventino Zapata and Alejandra V.

Zapata, Lilia V. Mendoza, and Roberto Villarreal and Aminta Villarreal ("the

Villarreal/Zapatas"). RMT's claims against Enron were for unlawful trespass onto RMT's

property, unlawful drainage, unjust enrichment, damages, and attorneys' fees. RMT's claims against the Villarreal/Zapatas were to remove cloud on their title, quiet their title, and for trespass to try title and damages. Ms. Mendoza filed counterclaims and cross-claims to assert that she held title to the disputed property, as an heir of Mr. Olegario Villarreal, under various applicable adverse possession statutes. Villarreal/Zapatas later intervened also asserting claims of adverse possession. The five tracts in dispute at trial were Z-294.5 B-1 (the "B-1" tract), Z-294.5 B-2 (the "B-2" tract), Z-294.5 F-1 (the "F-1" tract), Z-294.5 F-2 (the "F-2" tract), and Z-294.5 F-3 (the "F-3" tract).

The trial court severed RMT's claims against the defendants, and the case proceeded to trial against Enron alone. At trial, the jury concluded RMT failed to establish its title to the disputed properties. When RMT appealed the court's judgment, the San Antonio Court of Appeals reversed and remanded the case for a new trial. RMT's claims against Enron were eventually resolved, and are not part of the trial court's judgment from which Ms. Mendoza now appeals.

After the appellate court remanded the case, RMT filed no-evidence and traditional motions for partial summary judgment against the Villarreal/Zapatas on the bases that: (1) *res judicata* barred their claims because RMT's predecessors were adjudicated owners of all disputed properties in a federal condemnation proceeding, Civil Action No. 529, styled as *U.S. v. 85,237 Acres of Land, More or Less, in Zapata County, State of Texas, Flumencio Munoz, et al.* ("Civil Action No. 529"); and (2) there was no evidence to support the Villarreal/Zapatas' claims of adverse possession under the five, ten, and twenty-five year statutes. *See* TEX.CIV.PRAC.&REM.CODE ANN. §§ 16.025, 16.026, 16.027 (Vernon 2002).

On December 18, 2008, the trial court granted RMT's traditional and no-evidence motions for summary judgment, but did not specify the grounds for granting these motions. The court also ruled that Ms. Mendoza "is hereby divested of all right title and interest in and to the [B-1 tract] and to the [B-2 tract] and the [RMT] is hereby vested with all right, title and interest in and to the [B-1 tract] and to the [B-2 tract]." However, the court also ordered that with respect to the B-2 tract, Ms. Mendoza "shall have the right to appeal the granting of the [RMT's] motion for summary judgment as to that tract only." Ms. Mendoza now appeals the summary judgment.

In all of her issues, Ms. Mendoza contends the summary judgment was improper. In a traditional summary judgment proceeding, the standard of review on appeal is whether the successful movant at the trial level carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *See* TEX.R.CIV.P. § 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Wyatt v. Longoria*, 33 S.W.3d 26, 31 (Tex.App.--El Paso 2000, no pet.). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); *Wyatt*, 33 S.W.3d at 31. In resolving the issue of whether the movant has carried this burden, all evidence favorable to the nonmovant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the nonmovant's favor. *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When a plaintiff moves for summary judgment against a defendant's counterclaim, the plaintiff must negate one or more of the essential elements of the defendant's

counterclaim. *Martin v. McDonnold*, 247 S.W.3d 224, 229 (Tex.App.--El Paso 2006, no pet.)

A no-evidence summary judgment under TEX.R.CIV.P. § 166a(i) is essentially a pretrial directed verdict. *Wyatt*, 33 S.W.3d at 31. The party moving for summary judgment on this basis must specifically state the elements as to which there is no evidence. *See* TEX.R.CIV.P. § 166a(i). The burden then shifts to the nonmovant to produce evidence raising a fact issue on the challenged elements. *Id*. When reviewing a no-evidence summary judgment, the reviewing court views the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions. *Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). In a case where the trial court's judgment does not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

In Issue One, Ms. Mendoza contends the doctrine of *res judicata* was not a proper basis for summary judgment because RMT failed to satisfy the elements for *res judicata*, and that Civil Action No. 529 did not adjudicate title to RMT in the B-2 tract. She further argues that the second Special Master's Report from Civil Action No. 529, which concluded that RMT holds

-4-

title to the B-2 tract, was not a judgment, and that even if it was, she did not get notice of that proceeding.[1]

The central issue in this instance is whether the federal court order bars Ms. Mendoza's claims in state court. To answer this question, we must apply the federal *res judicata* analysis. *See San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 281 (Tex. 1996). Under federal law, *res judicata* bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999). *Res judicata* requires the satisfaction of four elements: (1) parties who are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Id*. at 934. In determining whether the actions involved the same claim or the same cause of action, the Fifth Circuit has adopted the transactional test of the Restatement (Second) of Judgments § 24. *Id*. The fourth element is met if the two actions are based on "'the same nucleus of operative facts.'" *Id*.

In Civil Action No. 529, the United States condemned the fee simple title except for oil and gas of the B-1 and B-2 tracts, and imposed a flooding easement as well as a negative drilling easement on the F-1, F-2, and F-3 tracts. The federal government then leased the B-1 and B-2 tracts for grazing to a third party, Mr. Oscar Gutierrez.

On December 11, 1956, the U.S. Marshall served certain individuals with process to

---

[1] Under Rule 53 of the Federal Rules of Civil Procedure, a U.S. district court has the authority to appoint a special master to perform duties consented to by the parties, make or recommend findings of fact, and address pretrial and post-trial matters that the judiciary cannot resolve efficiently. FED.R.CIV.P. 53.

notify them of this federal condemnation proceeding, and among the individuals served were Mr. and Mrs. Olegario Villarreal, Ms. Mendoza's parents, as well as RMT's predecessors.

In October 1957, the Special Master issued his first report concluding that the B-1, B-2, F-1, F-2, and F-3 tracts "were owned by persons whose identity cannot at the time be ascertained." In December 1957, the district court signed a judgment confirming the special commission's award and special master's report, and awarded $3,720 as a compensation for the B-1, B-2, F-1, F-2, and F-3 tracts. The court's registry held the award pending determination of the owners of these five tracts.

On March 13, 1963, the Assistant U.S. Attorney for the Southern District of Texas served a notice of a special comissioners' hearing to be held in Civil Action No. 529 to defendants by mail, and by posting at the county courthouses and post offices of Zapata and Webb counties. After the hearing, the Special Master issued his second report, which concluded: "the owners of 63.96 acres out of [the B-1 and B-2 tracts] containing 275.57 acres and [the F-1 tract] containing 109.8 acres, and [the F-2 tract] containing 8.48 acres and [the F-3 tract] containing 28.24 acres are: Guillermo Ramirez, an undivided 1/5 interest; Juan J. Ramirez, an undivided 2/5 interest; Santiago Ramirez, an undivided 1/5 interest; Ninfa U. Ramirez, an undivided 1/10 interest and Amado Ramirez, Jr. and Victor Manuel Ramirez, jointly, an undivided 1/10 interest."

The first element of *res judicata* requires the parties in the second action to be identical to the parties in the original action, or be in privity with the parties in the original action. *In re Southmark Corp.*, 163 F.3d at 934. Because Civil Action No. 529 involved Ms. Mendoza's and RMT's predecessors, and the parties were in privity with their predecessors, the first judgment

involved the same parties as in this action.[2]  As for the second element of *res judicata*, there is no dispute as to the fact that a court of competent jurisdiction rendered the judgment in Civil Action No. 529.

With respect to the third element of *res judicata*, Ms. Mendoza contends that the second Special Master's Report is not the same as a district court's judgment, and so there was no final judgment on the merits in Civil Action No. 529, which entitled RMT to the disputed property. At the time Civil Action No. 529 was tried, Federal Rule 52 of Civil Procedure provided:  "The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court."  FED.R.CIV.P. 52(a)(1946)(current version at FED.R.CIV.P. 52(a)).  At that time, Rule 53 provided that the court shall accept the master's findings of fact, unless they are clearly erroneous, in an action tried without a jury.  FED.R.CIV.P. 53(e)(1937)(current version at FED.R.CIV.P. 53(e)).  Under these rules, the federal court in Civil Action No. 529 properly accepted the Master's findings by ordering payment of funds to the Ramirez family based on the Master's findings.  Therefore, the federal court in Civil Action No. 529 did issue a final judgment on the merits as to who held title to the disputed property.

Finally, the instant action and Civil Action No. 529 involve the same claims or causes of action because both contain issues of title and ownership of the tracts.  Ms. Mendoza does not dispute that she received notice of the original condemnation proceeding, but she contends that she did not receive notice of the Special Master's hearing, which occurred on April 15, 1963. However, because Ms. Mendoza's parents, the predecessors through whom she claims, did

---

[2] Ms. Mendoza testified in her deposition that she claimed the disputed tract of land under her father, Mr. Olegario Villareal.

receive notice of the original proceeding and failed to file or serve an answer within twenty days after service of notice, they consented on her behalf to the taking and to the court's authority to proceed to hear the action and fix compensation. *See* FED.R.CIV.P. 71A(d)(2)(1951)(a defendant's failure to answer within twenty days after service of a notice in a condemnation action constitutes her consent to the taking and to the court's authority to proceed to hear the action and fix compensation).[3]

"[O]rdinarily all that due process requires in a civil case is proper notice and service of process and a court of competent jurisdiction; procedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack." *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1027 (5th Cir. 1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983). As such, even if procedural irregularities existed in Civil Action No. 529, Ms. Mendoza's attempt to raise a collateral attack on the prior judgment based on the absence of a notice for the Special Master's hearing fails. *See id.*

Because we determine, with respect to Issue One, that RMT met its burden to show there is no genuine issue of material fact, the trial court did not err in its grant of summary judgment. Accordingly, Issue One is overruled.

In Issues Two, Three, and Four, Ms. Mendoza argues the trial court erred in granting RMT's motions for summary judgment because she has satisfied an adverse possession claim to the B-2 tract based on the five, ten, and twenty-five-year statutes of limitations, respectively. In her briefing, Ms. Mendoza cites to affidavits and other parts of the record to show that her

---

[3] Federal Rule of Civil Procedure 71A, which provides procedures for condemnation cases, because effective on August 1, 1951.

summary judgment evidence "clearly created fact issues on each element" with respect to her causes of action.

Section 16.025(a) of the Texas Civil Practice and Remedies Code provides that a person must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, pays taxes on, and claims the property under a duly registered deed. TEX.CIV.PRAC.&REM.CODE ANN. § 16.025(a) (Vernon 2002). Section 16.026(a) of the Code provides that a person must bring suit not later than ten years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property. *Id*. at § 16.026(a). Section 16.028(a) provides that a person, regardless of whether he or she is or has been under a legal disability, may not maintain an action for the recovery of real property held for twenty-five years before the commencement of the action in peaceable and adverse possession by another who holds the property in good faith and under a deed or other instrument purporting to convey the property that is recorded in the deed records of the county where any part of the real property is located. *Id*. at § 16.028(a).

"Peaceable possession" is defined as possession of real property that is continuous, and is not interrupted by an adverse possession suit to recover the property. TEX.CIV.PRAC.&REM. CODE ANN. § 16.021(3). "Adverse possession" is defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *Terrill v. Tuckness*, 985 S.W.2d 97, 107 (Tex.App.--San Antonio 1998, no pet.), *quoting* TEX.CIV.PRAC.&REM.CODE ANN. § 16.021(1). Possession must not only be actual, but also visible, continuous, notorious, distinct, hostile (i.e., adverse), and of

such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990); *see also* TEX.CIV.PRAC.& REM.CODE ANN. § 16.021(1). Exclusive possession of the land is required to support an adverse possession claim, and joint or common possession by the claimant and the property owner defeats the requisite exclusiveness. *West End API Ltd. v. Rothpletz*, 732 S.W.2d 371, 375-6 (Tex.App.--Dallas 1987, writ ref'd n.r.e.), *citing Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925, 927 (Tex. 1948).

In order to satisfy the element of actual possession, Ms. Mendoza must have been seen on the land to give RMT notice that she was claiming a right to the disputed property. *See Perkins v. McGehee*, 133 S.W.3d 287, 291-2 (Tex.App.--Fort Worth 2004, no pet.). Acts that may show actual and visible appropriation of real property include grazing cattle, building fences, and the occupation of land. *Mohnke v. Greenwood*, 915 S.W.2d 585, 593-94 (Tex.App.--Houston [14th Dist.] 1996, no writ); *Wall v. Carrell*, 894 S.W.2d 788, 800 (Tex.App.--Tyler 1994, writ denied); *Parker v. McGinnes*, 842 S.W.2d 357, 360 (Tex.App.--Houston [1st Dist.] 1992, writ denied).

Ms. Mendoza contends the evidence shows that besides paying *ad valorem* taxes and obtaining a Partition Decree on the disputed property, she and her predecessors engaged in activities such as grazing cattle, planting crops, cultivating fields, repairing and replacing fences, operating a slaughterhouse, holding family gatherings, and conducting ranching operations on the property. She further argues that this evidence establishes her adverse possession claim, that the exceptions to the "casual fencing" doctrine apply to support this claim, and that the evidence shows she and her predecessors intended to own the disputed property.

Use of land for grazing cattle, along with other related use, is insufficient to establish title

-10-

by adverse possession where the disputed property was incidentally enclosed by casual fences. *See Rhodes v. Cahill*, 802 S.W.2d 643, 646 (Tex. 1990); *McDonnold v. Weinacht*, 465 S.W.2d 136, 142 (Tex.1971); *see also Martin*, 247 S.W.3d at 235; *Mohnke*, 915 S.W.2d at 593 (adverse possession claim not established by evidence of barbed wire fence, cattle grazing, and tree planting). Grazing fails to establish adverse possession as a matter of law, unless the fence used is a "designed enclosure" as opposed to "casual fences." *Rhodes*, 802 S.W.2d at 646. If the fence existed before the claimant took possession of the land, and the claimant fails to demonstrate the purpose for which it was erected, then the fence is a "casual fence." *Id*. at 646. Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's animals within the enclosed area, generally does not change a casual fence into a designed one. *Weinacht*, 465 S.W.2d at 142-43. A claimant, however, may substantially modify a casual fence and thereby change its character so that the fenced-in area becomes a designed enclosure. *Rhodes*, 802 S.W.2d at 646.

In the instant case, Mr. Gutierrez, the federal government's lessee, built the original fence, which existed before Ms. Mendoza took possession of the land. Further, Ms. Mendoza has failed to demonstrate the purpose for which this fence was erected. As such, this fence is classified as a casual fence. *See Rhodes*, 802 S.W.2d at 646.

Ms. Mendoza argues she and her predecessors "routinely replaced posts on the fence, placed wire on the fence and otherwise repaired and replaced posts, and changed [the fence's barb wire] as required . . . at the request of the federal government," and that these activities satisfied the requirement of substantial modification to make the fence a designed one. One of the primary authorities she relies on is asserting her adverse possession claim is *Butler v.*

-11-

*Hanson*, which she argues has similar facts to the instant case. 455 S.W.2d 942 (Tex. 1970).

In *Butler v. Hanson*, the court held the evidence showed an adverse possession claimant substantially modified a casual fence such that it became a designed enclosure. *Id*. at 945. In that case, the claimant and his father changed or rebuilt the entire fence sometime in the 1930s; the fence had been a three-strand barbed wire fence, but the claimant, his father, and other relatives converted it to a net wire fence with two barbed wire strands at the top. *Id*. at 944. Around 1950 or 1952, he again repaired the fence by putting new posts between the old posts. *Id*. There was also undisputed evidence that the fence belonged to the adverse possessor. *Id*. at 946.

The instant case is, however, very distinguishable from *Butler*. Ms. Mendoza and her predecessors testified that the Villarreal family maintained and repaired the fence as well as replaced barbed wires and posts on the fence erected by Mr. Gutierrez. The Villarreals did not modify the entire fence, nor did they change the nature of it completely, as the claimants did in *Butler*. Moreover, evidence showed that Ms. Mendoza and her predecessors modified the fence at the federal government's request, and not necessarily out of their own volition. As such, Ms. Mendoza's claim of adverse possession based on grazing, coupled with other related uses such as planting, fails as a matter of law because there was no designed fence. *See Rhodes*, 802 S.W.2d at 646; *Weinacht*, 465 S.W.2d at 142; *Martin*, 247 S.W.3d at 235; *Mohnke*, 915 S.W.2d at 593.

Ms. Mendoza's other claims of occupancy also fail to establish actual and visible appropriation of the disputed property. Sporadic, irregular, and occasional use of land does not establish an adverse possession claim. *Harlow v. Giles*, 132 S.W.3d 641, 646 (Tex.App.--

Eastland 2004, pet. denied). Moreover, a claimant's occasional visits on the disputed property does not suffice in establishing an adverse claim. *Wall*, 894 S.W.2d at 800. As such, the family gatherings by Ms. Mendoza and her predecessors on the disputed property did not constitute actual and visible appropriation of the property. *See id*. The payment of taxes is some evidence of adverse possession, but it is insufficient to establish adverse possession as a matter of law. *Templeton v. Dreiss*, 961 S.W.2d 645, 670 (Tex.App.--San Antonio 1998, pet. denied); *Dellana v. Walker*, 866 S.W.2d 355, 361 (Tex.App.--Austin 1993, pet. denied). As such, the payment of taxes by Ms. Mendoza and her predecessors on the disputed property was not a visible and appropriation of the property either. *See Templeton*, 961 S.W.2d at 670; *Dellana*, 866 S.W.2d at 360-61. Therefore, Ms. Mendoza failed to establish adverse possession as a matter of law.

We find then, with respect to Issues Two, Three, and Four, that RMT met its burden to show there is no genuine issue of material fact. *See Gibbs*, 450 S.W.2d at 828. The trial court did not err in its grant of summary judgment. We overrule Issues Two, Three, and Four.

In Issue Five, Ms. Mendoza argues the trial court erred by failing to give effect to the Rule 11 Agreement announced in open court that she was to be adjudicated the owner of the Z-294.4 B-1 tract and the Z-294.4 B-2 tract because the court's judgment only reflects that RMT would quitclaim its interest, and omits the requirement that the other Villarreal/Zapata co-defendants quitclaim their interest in these two tracts to her.

Even if it could be said that there was an agreement, Ms. Mendoza never requested that the trial court enforce it. Consequently, she waived her complaint regarding the court's failure to enforce the Rule 11 agreement. *See* TEX.R.CIV.P. 166a(c)("[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as

-13-

grounds for reversal."); *see also* TEX.R.APP.P. 33.1; *see also Rammah v. Abdeljaber*, 235 S.W.3d 269, 273 (Tex.App.--Dallas 2007, no pet.)(appellant waived his claim that trial court erred in refusing to enforce Rule 11 agreement where appellant failed to move the trial court to enforce the agreement with sufficient specificity and failed to obtain a ruling). Issue Five is overruled.

Having overruled all issues presented for our review, we affirm the trial court's judgment.


December 15, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., Rivera, and Larsen, JJ.
Larsen, J. (Sitting by Assignment)

-14-