

NUMBER 13-22-00186-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **THOMAS M. FLETCHER JR.,** | **Appellant,** |
| **v.** | |
| **GARY L. MERRITT, TRUSTEE, THE GARY MERRITT AND JANICE MERRITT REVOCABLE TRUST, ET AL.** | **Appellees.** |

On appeal from the 404th District Court
of Cameron County, Texas.

## MEMORANDUM OPINION

Before Justices Tijerina, Silva, and Peña
Memorandum Opinion by Justice Silva

Appellant Thomas M. Fletcher Jr. appeals the trial court's order divesting him of

real property vis-à-vis a trespass-to-try-title suit and awarding appellees Gary L. Merritt,

Trustee, The Gary Merritt and Janice Merritt Revocable Trust (the Trust), Joel Barajas, Edelmiro Campos,[1] and Rodolfo Gonzalez compensatory damages, court costs, and attorney's fees. By four issues, which we construe as two, appellant argues that (1) the evidence was insufficient to support appellees' adverse possession of appellant's property, and (2) the trial court erred by awarding appellees attorney's fees. We affirm in part and reverse and render in part.

## I. BACKGROUND

Appellees filed a suit to "quiet title"[2] over a portion of land to which appellees and appellant both claimed title.[3] According to the petition, after appellant purchased his property in April 2018, a dispute arose over the ownership of a 29.8-foot-wide strip of land between appellees' and appellant's properties.[4] Appellees commissioned the help of a surveyor who, after investigating, determined that both appellees' and appellant's deeds showed they each owned the 29.8-foot-wide strip of land. Thereafter, appellees sought to obtain superior title over the disputed property through adverse possession and

---

[1] The final order spells Campos's name "Edilmiro."

[2] Appellees' petition characterizes their suit as one quieting title. However, a suit to quiet title is an equitable remedy that "is available only to those who claim ownership in the property whose title is allegedly 'clouded.'" *Lance v. Robinson*, 543 S.W.3d 723, 739 (Tex. 2018). Appellees do not allege a cloud exists on their title but instead seek to establish superior title and right of possession to the disputed strip of land through statutory means—a trespass to try title suit. *See id.* at 736–37.

[3] Each appellee owns a 25% undivided interest in the property.

[4] Initially, Gary L. Merritt as trustee for the Gary Merritt and Janice Merritt Revocable Trust (the Trust) was the only plaintiff, and appellant was the only defendant. However, an amended petition was filed, which added the remainder of appellees to the suit as plaintiffs. Appellees' amended petition also added additional defendants, alleging that appellant purchased a 50% undivided interest in the property in 2015 and the remaining ownership rested with Daniel L. and Milca Pena, who together owned a 25% undivided interest in the property, and Wayne I. Becker, who owned a 25% undivided interest in the property. Daniel was also listed as "Manuel" Pena in one portion of the amended petition.

2

included a claim for trespass based on appellant's physical, intentional, and voluntary entry onto their property without permission. Appellees sought exemplary damages, attorney's fees, and an order establishing that they possessed superior title to the disputed property.

Appellant filed a cross petition against Clark A. Natalie, executor of the estate of Charles A. Natalie. According to appellant's cross petition, appellant purchased the property from Charles before his death. Appellant claimed that Charles issued a warranty deed, guaranteeing good title to the property. Thus, appellant sought damages from the estate to the extent he did not have good title when Charles conveyed the property. Clark, as executor of the estate, answered appellant's cross petition by denying the allegation and claiming that appellant purchased the property "as-is, where-is," and relied on title insurance rather than representations made by Charles.

The case proceeded to a bench trial wherein the following evidence was adduced.

A.    **Juan Garcia**

Juan Garcia is a land surveyor who has been registered and licensed in Texas since 1983. In 2021, Garcia performed a survey of appellees' property and compared it to a previously completed survey of the same property by Henry Willms (Willms survey). Garcia noted that he was able to find "all the pins" that were identified in the previous survey and replicated its findings. A copy of Garcia's survey was admitted as an exhibit.



Appellees' lot is on the left, appellant's on the right, and the disputed property is noted between the two lots outlined in red. The highlighted portion shows improvements on appellees' property. Garcia then compared his findings based on the Willms survey with a survey done by Moore Land Surveying (Moore survey).

According to Garcia, the metes and bounds descriptions caused the overlap. Garcia testified:

> Well, you have two deeds. They both had the same starting point, which is the northwest corner of Lot 4, then, of course, they go east to a certain point. One of them had a distance and the other one has a different distance, a fairly big difference, and they're in the overlap parts. One of them is thirty feet less than the other one.

## B. Gary L. Merritt

Merritt testified that he and his wife Janice moved onto the property in February 2009 after purchasing it and have remained there since. The Merritts then transferred the

4

property into the Trust in 2015. On February 1, 2019, the Trust filed a correction deed that corrected the direction of the metes and bounds description. All three deeds were admitted as exhibits. For ease of comparison, the following chart shows the correction in the deed, with the alterations in bold:

| Original Deed | Correction Deed |
|---|---|
| COMMENCING at the Western corner common to Lot 3 and Lot 4, Block "A", COE SUBDIVISION, Cameron County, Texas, as shown on Map thereof recorded in Volume 8, Page 35, Map Records of Cameron County, Texas | COMMENCING at the Western corner common to Lot 3 and Lot 4, Block "A", COE SUBDIVISION, Cameron County, Texas, as shown on Map thereof recorded in Volume 8, Page 35, Map Records of Cameron County, Texas |
| THENCE East along the South line of said Lot 3, being the North line of said Lot 4, a distance of 218.00 feet to the point of beginning | THENCE East along the South line of said Lot 3, being the North line of said Lot 4, a distance of 218.00 feet to the point of beginning |
| THENCE South 00 degrees, 26 minutes West a distance of 123.50 to a point | THENCE South 00 degrees, 26 minutes **East** a distance of 123.50 to a point |
| THENCE East a distance of 221.48 feet to a point | THENCE East a distance of 221.48 feet to a point |
| THENCE North 00 degrees, 26 minutes East a distance of 233.62 feet to a point | THENCE North 00 degrees, 26 minutes **West** a distance of 233.62 feet to a point |
| THENCE West a distance of 439.48 feet to a point | THENCE West a distance of 439.48 feet to a point |
| THENCE South a distance of 30.00 feet to a point | THENCE South a distance of 30.00 to a point |
| THENCE East a distance of 218.00 feet to a point | THENCE East a distance of 218.0 feet to a point |
| THENCE South 00 degrees, 26 minutes West a distance of 82.4 feet to THE POINT OF BEGINNING | THENCE South 00 degrees, 26 minutes **East** a distance of 82.4 feet to THE POINT OF BEGINNING |

The correction deed listed a "clerical error in connection with the metes and bounds description" as the sole reason for the correction.

According to Merritt, the former owner of appellant's property, Charles, showed him where the boundaries of each property were, which coincided with Garcia's survey.

5

## C.      Robert Banks

Robert Banks, appellees' trial attorney, testified regarding his fees in the case. According to Banks, he performed thirty-two hours of labor at three-hundred dollars per hour, which "involved research of the chain of title to all parties, the deeds, the preparation and filing of the [o]riginal and [a]mended [p]etitions, reviewing [appellant]'s pleadings, researching the facts, researching court documents, researching the law, [attending] mediation, and attendance at the trial hereof." Banks also testified as to his credentials and experience as well as the factors he considered in determining the reasonableness of his attorney's fees. According to Banks, his total attorney's fees were $9,600.

## D.      Thomas M. Fletcher Jr.

Fletcher testified that he purchased the property in 2018 and had it surveyed within forty-five days thereafter pursuant to the contract. Fletcher agreed he purchased the property "as is." According to Fletcher, he entered the purchase contract based off the Willms survey that was done prior to the development of appellees' property, which did not show an overlap in the properties. Fletcher believed he and his cotenants as well as the Merritts and their cotenants all paid taxes on the disputed strip of land. Fletcher elaborated that the lot in the Willms survey encompassed the entirety of both lots in the Garcia survey. The Willms survey was admitted as an exhibit.[5]

---

[5] The trial court added the red x's in each corner after the exhibit was admitted.



### E. Daniel L. Pena

Daniel L. Pena, one of the defendants who owned an undivided interest in Fletcher's lot, testified that there was no boundary dispute until Fletcher arrived. When asked if he had any perspective on who the trial court should award the disputed property to, Pena wavered and stated, "If it belongs to me, I have to cut the lawn more; and if it belongs to the opposite party, I'm not going to invest money to fight over something that does not belong to me." Subsequently, on recall, Pena ultimately expressed to the trial court that he agreed with the appellees' request because "[t]hat was the way it was ever since the beginning."

### F. Trial Court's Ruling

The trial court found in appellees' favor, entering an order that they had superior title in the disputed strip of land.[6] Furthermore, the trial court entered an order for

---

[6] The trial court granted a directed verdict in favor of Clark A. Natalie, executor of the estate of Charles Natalie. Appellant did not appeal the directed verdict.

compensatory damages in the amount of $6,500, attorney's fees in the amount of $9,600, court costs, and pre- and post-judgment interest in favor of appellees. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

### A. Applicable Law

"By statute, a trespass-to-try-title action 'is the method of determining title to lands.'" *Brumley v. McDuff*, 616 S.W.3d 826, 831–32 (Tex. 2021) (quoting TEX. PROP. CODE ANN. § 22.001(a)). Thus, "a trespass-to-try-title action is the exclusive remedy for resolving overarching claims to legal title." *Id.* at 832. (citing TEX. PROP. CODE ANN. § 22.001(a)). A party may prove legal title to property in a trespass-to-try-title action "by establishing: (1) a regular chain of title of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out of a common source; (3) title by limitations (i.e., adverse possession); or (4) possession that has not been abandoned." *Id.* "On the failure of a plaintiff to establish superior title in a trespass to try title suit, the proper course of action is for the trial court to enter a take-nothing judgment." *Great N. Energy, Inc. v. Circle Ridge Prod., Inc.*, 528 S.W.3d 644, 670 (Tex. App.—Texarkana 2017, pet. denied).

"'Adverse possession' means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021.

> To prevail on a claim of adverse possession, a claimant must establish, by a preponderance of the evidence, (1) the actual and visible possession of the disputed property; (2) that is adverse and hostile to the claim of the owner of record title; (3) that is open and notorious; (4) that is peaceable; (5) that is exclusive; and (6) that involves continuous cultivation, use, or enjoyment throughout the statutory period.

8

*NAC Tex Hotel Co. v. Greak*, 481 S.W.3d 327, 331–32 (Tex. App.—Tyler 2015, no pet.). "'Peaceable possession' means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(3).

As relevant here, a person adversely possesses property if, for five years, they (1) cultivate, use, or enjoy the property; (2) pay applicable taxes on the property; and (3) claim the property under a duly registered deed. *Id.* § 16.025(a). "If an action for the recovery of real property is barred by [adverse possession], the person who holds the property in peaceable and adverse possession has full title, precluding all claims." *Kazmir v. Benavides*, 288 S.W.3d 557, 561 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.030(a)).

A duly filed correction deed "is: (1) effective as of the effective date of the recorded original instrument of conveyance; (2) prima facie evidence of the facts stated in the correction instrument; (3) presumed to be true; (4) subject to rebuttal; and (5) notice to a subsequent buyer of the facts stated in the correction instrument." TEX. PROP. CODE ANN. § 5.030(a).

## B.    Standard of Review

When a party challenges the legal sufficiency of evidence supporting a finding by a trial court for which it did not have the burden of proof, it must demonstrate that there is no evidence to support the finding. *State Office of Risk Mgmt. v. Pena*, 548 S.W.3d 84, 90 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (first citing *City of Keller v. Wilson*, 168 S.W.3d 802, 807–08 (Tex. 2005), then citing *Croucher v. Croucher*, 660 S.W.2d 55,

9

58 (Tex. 1983)). Evidence will be viewed in the light most favorable to the trial court's ruling, crediting favoring evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *Id.* (citing *City of Keller*, 168 S.W.3d at 807). "Our traditional legal sufficiency—or no evidence—standard of review upholds a finding supported by anything more than a scintilla of evidence." *Id.* (cleaned up). "[I]f the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Id.* (quoting *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014)).

A "party attacking the factual sufficiency of a finding on which an adverse party bore the burden of proof must show that the record presents 'insufficient evidence' to support the finding." *Id.* at 94 (quoting *Gooch v. Am. Sling Co., Inc.*, 902 S.W.2d 181, 184 (Tex. App.—Fort Worth 1995, no pet.)). When reviewing a finding for factual sufficiency, "we examine and consider all of the evidence, not just the evidence that supports the verdict, to see whether it supports or undermines the finding." *Id.* at 95 (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)). "We set aside the finding for factual insufficiency if the 'evidence adduced to support the vital fact, even if it is the only evidence adduced on an issue, is factually too weak alone to support it.'" *Id.* (quoting *Ritchey v. Crawford*, 734 S.W.2d 85, 86–87 n.1 (Tex. App.—Houston [1st Dist.] 1987, no writ)). Evidence is factually sufficient when, considering all the evidence, the judgment is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

**C.    Analysis**

By what we construe as his first issue, appellant argues that the evidence was factually and legally insufficient to support a finding of adverse possession. Appellant specifically challenges adverse possession on the grounds that (1) he filed a challenge disputing appellees' ownership, (2) the corrected deed fails to satisfy the five-year requirement for adverse possession, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.025, and (3) appellees only erected temporary structures, which are not sufficient to support adverse possession. We address each claim in turn.

**1.    Peaceable Possession**

Appellant challenges the trial court's finding that he "failed to file any challenge to [appellees'] ownership of the [d]isputed [p]roperty." We note that "[f]indings of fact shall not be recited in a judgment." TEX. R. CIV. P. 299a. As such, it is improper for us to review any specific findings made by the trial court in the judgment. *See id.*; *see also Martinez v. Hauling 365, LLC*, No. 13-20-00195-CV, 2022 WL 480251 (Tex. App.—Corpus Christi–Edinburg Feb. 17, 2022, no pet.) (mem. op.). Accordingly, we construe appellant's argument as challenging the evidence supporting the element of "peaceable possession" by appellees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(3); *NAC Tex Hotel Co.*, 481 S.W.3d at 331–32.

Here, appellant argues that he challenged appellees' ownership of the disputed strip of land through his answer to appellees' petition. However, appellant cites no authority, and we find none, that supports his position that denying appellees' petition is sufficient to disrupt the "peaceable possession" element of adverse possession. *See NAC*

11

*Tex Hotel Co.*, 481 S.W.3d at 331–32. Rather, appellant needed to interrupt appellees' peaceable possession by filing "an adverse suit to recover the property." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(3). Neither appellant nor the predecessor owner ever filed an adverse suit to recover the property. *See id.* Accordingly, we conclude the evidence was sufficient to support the element that appellees' possession was peaceable. *See id.*; *Pena*, 548 S.W.3d at 90, 94–95.

### 2. Correction Deed

Appellant next challenges the evidence supporting the trial court's adverse possession finding as it relates to the "duly registered deed" requirement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.025(a)(3). In particular, appellant argues that the general warranty deed relied upon by the Trust was a correction deed that was not filed until February 1, 2019, which was less than five years before appellees filed their trespass-to-try-title action. However, pursuant to Texas Property Code § 5.030(a)(1), the correction deed is effective as of the date of the original deed. *See* TEX. PROP. CODE ANN. § 5.030(a)(1). Appellant provides no authority that § 5.030(a)(1)'s mandate does not affect limitations for the purposes of adverse possession, and we find none. Moreover, if and to what degree the corrected metes and bounds description changed the boundary over the disputed property is unclear. Appellant did not challenge the correction deed or elicit testimony from appellees' surveyor of any change the metes and bounds description would have had on the boundary, leaving us to speculate as to such. Lastly, at trial, appellant acknowledged that, notwithstanding the error in the original deed, all parties have been paying the property taxes for the disputed property. Accordingly, we conclude

12

the correction deed supports the five-year limitations period. *See id.*; TEX. CIV. PRAC. & REM. CODE ANN. § 16.025(a)(3).

### 3. Temporary Structures

Finally, appellant challenges the trial court's finding of adverse possession on the grounds that "[a]ppellees failed to show that their actual and visible appropriation of possession in the entire [d]isputed [p]roperty" because they placed only "temporary improvements" on the disputed strip of land.

Adverse possession requires continuous use, cultivation, or enjoyment throughout the statutory period, *see NAC Tex Hotel*, 481 S.W.3d at 331–32, and "[s]poradic, irregular, and occasional use of land does not establish an adverse possession claim." *Mendoza v. Ramirez*, 336 S.W.3d 321, 329 (Tex. App.—El Paso 2010, pet. denied). Appellant argues that the Merritt's shed and propane tank that were located in the disputed property constitute "temporary improvements" and were thus insufficient to demonstrate continuous use, cultivation, or enjoyment. *See id*. However, appellant presents no authority that requires permanent structures be built in order to establish continuous use, cultivation, or enjoyment. *See NAC Tex Hotel,* 481 S.W.3d at 331–32. Although appellant asserts there was no evidence as to when appellees built the improvements or used the disputed property, Merritt testified that he maintained the property since moving in, and Pena testified that the disputed strip of land "always" belonged to the appellees. Moreover, the evidence shows that Campos's porch was built on the disputed property. Accordingly, we conclude the evidence was sufficient to show that appellees continuously used, cultivated, or enjoyed the disputed property for the statutory period. *See id.*

Having concluded the evidence was sufficient to support each of the challenged elements for adverse possession, we overrule appellant's first issue.

### III. ATTORNEY'S FEES

By his second issue, appellant argues that the trial court erred by awarding appellees attorney's fees because attorney's fees are not permitted for trespass-to-try-title suits. *See King Operating Corp. v. Double Eagle Andrews, LLC*, 634 S.W.3d 483, 494 (Tex. App.—Eastland 2021, no pet.). By contrast, appellees argue that the trial court properly awarded attorney's fees pursuant to the Texas Uniform Declaratory Judgment Act (UDJA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (permitting a trial court to award reasonable and necessary attorney's fees under the UDJA).

### A. Standard of Review and Applicable Law

We review an award of attorney's fees utilizing an abuse of discretion standard. *Berry v. Bay, Ltd.*, 643 S.W.3d 424, 431 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.). "A trial court abuses its discretion when a 'decision is arbitrary, unreasonable, and without reference to guiding principles.'" *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019) (quoting *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). "A trial court has no discretion in determining what the law is or applying the law to the facts . . . ." *Diaz v. Todd*, 618 S.W.3d 798, 805 (Tex. App.—El Paso 2020, no pet.).

In Texas, parties are generally required to pay their own attorney's fees unless fee-shifting is authorized by statute. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 483–84 (Tex. 2019); *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding). Attorney's fees are not permitted for a trespass-to-try-title suit,

14

*see King Operating*, 634 S.W.3d at 494, but are available under the UDJA. *See* Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 37.009. "Because a trial court's judgment must conform to the pleadings, a party seeking attorney's fees must plead for them, specifying the legal standard under which the fees are sought." *Patriot Contracting, LLC v. Shelter Products, Inc.*, 650 S.W.3d 627, 655 (Tex. App.—Houston [1st Dist.] 2021, pet. denied). However, a party does not need to specifically plead the applicable statute to recover attorney's fees under it, so long as it pleads facts that would, if true, entitle it to the relief sought. *Id.* at 656. "The substance of the party's pleading, rather than its form, determines whether a claim sounds in trespass to try title." *King Operating*, 634 S.W.3d at 494.

## B. Analysis

The trial court's judgment awards appellees "[r]easonable and necessary attorney's fees for the preparation and trial of this case in the amount of $9,600[]; ([Civil Practice and Remedies Code §§] 16.034, 37.004)." Texas Civil Practice and Remedies Code § 16.034 permits attorney's fees in an adverse possession suit in a limited scenario: "if the prevailing party recovers possession of the property from a person unlawfully in actual possession." Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 16.034(a). Appellees presented no evidence that appellant was in "actual possession" of the disputed property. Accordingly, appellees were not entitled to attorney's fees under this provision. *See id.* Therefore, we will examine whether appellees were entitled to attorney's fees under § 37.004(c) of the civil practice and remedies code. *See id.* § 37.004(c).

The UDJA permits a party to seek a declaratory judgment "when the sole issue concerning title to real property is the determination of the proper boundary line between

15

adjoining properties." *Id.* § 37.004(c). However, a review of appellees' pleadings does not lend credibility to their argument that they pursued this claim under § 37.004(c). *See id.* The only mention of a declaratory judgment can be found in a heading that reads "Suit to Quiet Title/Declaratory Judgment." The words that follow all relate specifically to adverse possession, a means of acquiring property recognized through a trespass-to-try-title suit. *See Brumley*, 616 S.W.3d 832. Therein, appellees specifically cited to the Texas Civil Practice and Remedies Code § 16.025 (Adverse Possession: Five-Year Limitations Period) and § 16.030 (Title Through Adverse Possession). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.025, 16.030. Appellees pleaded facts that supported title through adverse possession. Moreover, in their request for attorney's fees, appellants cited Texas Civil Practice and Remedies Code §§ 38.001, et seq. *See id.* § 38.001 (permitting attorney's fees for specific causes of action).

Although a party is not required to plead a specific statute permitting attorney's fees, doing so puts the opposing party on fair notice of their intent to seek attorney's fees under the pleaded statute. *See Woolam v. Tussing*, 54 S.W.3d 442, 447 (Tex. App.— Corpus Christi–Edinburg 2001, no pet.) ("The purpose of pleadings is to give the adverse parties notice of each party's claims and defenses, as well as notice of the relief sought."). "[W]hen a party has satisfied the pleading requirements for a claim for trespass to try title, we disregard 'other variations' and treat 'any suit to establish title to land as a trespass-to-try title action.'" *King Operating*, 634 S.W.3d at 494 (quoting *Brumley*, 616 S.W.3d at 832).

Here, appellees' petition did not request that the trial court determine the boundary

16

between the two lots; rather, appellees specifically requested the trial court to determine that they had a superior right to possession of the disputed strip of land through limitations (adverse possession), a mechanism available under a trespass-to-try-title suit. *See Brumley*, 616 S.W.3d 832. Moreover, at trial, appellees opened by stating "[t]his is a case involving title by adverse possession." *See id.* Similarly, the evidence presented and arguments made related to adverse possession, not a question as to where the boundary lies between two lots. *See id.* Accordingly, we conclude that appellees pleaded, sought, and obtained relief through a trespass-to-try-title suit, not a declaratory judgment. *See King Operating*, 634 S.W.3d at 494. As such, without authority by which the trial court could grant attorney's fees, it abused its discretion in doing so. *See Rohrmoos Venture*, 578 S.W.3d at 483–84; *Berry*, 643 S.W.3d at 431. Appellant's second issue is sustained.

## IV. CONCLUSION

We affirm the trial court's judgment providing appellees with superior title over the disputed property; however, we reverse the portion of the judgment awarding appellees attorney's fees and render a judgment denying attorney's fees.

CLARISSA SILVA
Justice

Delivered and filed on the
28th day of August, 2023.

17